## KINGSBURY *v.* BUCKNER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 176.   Argued January 8, 9, 1890. — Decided April 7, 1890.

In Illinois, a decree against a minor is subject to attack, by an original bill, for error apparent on the record, for want of jurisdiction, or for fraud.

In Illinois, the rule is that a decree against an infant is absolute in the first instance, subject to the right to attack it by original bill, but until so attacked, and set aside or reversed, on error or appeal, it is binding to the same extent as any other decree or judgment.   The right to so attack it may be exercised at any time before the infant attains his majority, or at any time afterwards within the period in which he may prosecute a writ of error for the reversal of such decree.

A decree is subject to attack by original bill for fraud, even after judgment in the appellate court; but a party, whether an infant or adult, against whom a decree is rendered by direction of the appellate court, cannot impeach it, by bill filed in the court of first instance, merely for errors apparent on the record, that do not involve the jurisdiction of either court.

An infant, by his *prochein amy,* having elected to prosecute an appeal to the Supreme Court of Illinois from the decree rendered in the original suit brought by him, and having appeared by guardian *ad litem* to the appeal of the cross-plaintiffs in the same suit, is as much bound by the action

.of that court in respect to mere errors of law, not involving jurisdiction, as if he had been an adult when the appeal was taken.

In Illinois, a cross-bill is regarded as an adjunct or part of the original suit, the whole together constituting one case; and process against the plaintiff is not necessary upon a cross-bill, even where he is an infant.

The plaintiff, by his bill, claimed to own certain real estate, by inheritance from his father, to whom the defendants had conveyed it by deed, absolute in form, and prayed for a decree confirming and establishing his title. The defendants, by cross-bill, alleged that the deed was made and accepted for the purpose of placing the title in trust for the benefit of one of the defendants, and asked a decree to that effect: *Held*, That the subject matter of the cross-bill was germane to that of the original bill.

The statutes of Illinois, relating to suits by infants, are not to be interpreted to mean that no suit in the name of an infant, by next friend, can be entertained, unless such next friend is selected by the infant. Nor does the right to bring such a suit depend upon the execution by the next friend of a bond for costs; though he may be required to give such bond before the suit proceeds to final judgment and execution.

While a guardian *ad litem* or *prochein amy* of an infant cannot, by admissions or stipulations in a suit in equity, surrender substantial rights of the infant, he may, by stipulation, assent to arrangements which will facilitate the trial and determination of the cause in which such rights are involved, and the infant will be bound thereby.

Appeals and writs of error may be taken to the Supreme Court of Illinois held in the grand division in which the case is decided, or, by consent of the parties, to any other grand division. A guardian *ad litem* or next friend of an infant may consent that the case, in which the infant is a party, be heard in some other grand division than the one in which it was decided, or at a term of the Supreme Court earlier than such appeal or writ of error would be ordinarily heard, and may waive the execution of an appeal bond by the opposite party.

An appeal bond is not essential to the jurisdiction of the Supreme Court of Illinois, any more than in this court, where the appeal is allowed and a transcript of the record is filed in due time; although the appeal may be dismissed, if such bond is not executed in accordance with the rules or the order of the court.

Case stated in which a husband is held not to be an incompetent witness, under the statutes of Illinois, in support of his wife's claim to property.

Various charges of fraud and collusion upon the part of a guardian *ad litem* examined and held not to be sustained.

Mr. JUSTICE HARLAN, on behalf of the court, stated the case as follows:

This suit involves the title to real estate of considerable value in the city of Chicago, of the possession of which the

appellant, who was the plaintiff below, claims to have been deprived by certain proceedings in the courts of Illinois, to which Simon B. Buckner, his wife and others were parties. The relief sought is a decree declaring those proceedings to have been erroneous, fraudulent, and void as to the plaintiff, and adjudging not only that such estate be restored to him, but that Buckner and wife be held as trustees *ex maleficio*, with liability to account for the income of the property.

The history of the plaintiff's claim to the property, as well as of the proceedings in the state courts, the integrity and legal effect of which are assailed in the present suit, must be given before examining the grounds on which he seeks a reversal of the decree.

Major Julius J. B. Kingsbury, of the United States army, died, intestate, on or about the 25th of June, 1856, seized of lots designated five and six in block thirty-five on the original map of the town of Chicago, and also of that part of the east half of the northwest quarter of section nine in township thirty-nine north, of range fourteen east, of the third principal meridian, which lies east of the North Branch of the Chicago River and south of the centre of Ontario Street, in Cook County, excepting, however, a small portion of the last-named tract, previously conveyed by him to Buckner.

The intestate left surviving him his widow, Jane C. Kingsbury, and two children, Mrs. Buckner and Henry W. Kingsbury, the father of the appellant. These children were his only heirs at law.

By deed duly executed and acknowledged on the 15th of May, 1861, Buckner and wife, " in consideration of the sum of one dollar, and of the natural love and affection " of the grantors for the grantee, conveyed to Henry W. Kingsbury, the brother of Mrs. Buckner, and, at that time, a lieutenant in the United States army, one undivided half of the above lots five and six, and all their right, title and interest in the " Kingsbury tract," containing thirty-five acres, more or less, being the south half of what then remained of the northwest quarter of section nine, township thirty-nine, range fourteen, in Cook County, after deducting therefrom the town of Wabansia,

to have and to hold the same to the grantee, his heirs and assigns forever, the grantors covenanting that they would warrant the property conveyed. The deed recited that the other undivided half of the land and tenements formerly owned by Major Kingsbury belonged to the grantee as one of his heirs, and that the entire property was subject to the dower rights of his widow.

On the 25th of March, 1862, the plaintiff's father executed an instrument which, upon proof that it was wholly in his handwriting and signed by him, was ordered by the Corporation Court of the City of Alexandria, Virginia, to be recorded as his last will and testament. And under an order of that court, passed May 10, 1870, Ambrose E. Burnside qualified as his executor. On the 11th of July, 1870, that writing, with the proof thereof, was presented by Burnside, as executor, to the County Court of Cook County, Illinois, for record; and by the latter court it was ordered "that the said will and proof thereof, certified as aforesaid, be recorded, and that the same be treated and considered as good and available in law in like manner as wills executed in this State."

The writing referred to is as follows:

"Expecting soon to start upon a military expedition where death may overtake me, I leave this as a record of my wishes respecting the disposition of my property:

"To my mother, Jane C. Kingsbury, I leave twenty thousand dollars, or so much of my Chicago property as upon fair appraisal may be valued at that amount.

"To my sister, Mary J. Buckner, I leave as much of the Chicago property held in my name as shall amount to one-third of the property in the city of Chicago, Illinois, held by my father, Julius J. B. Kingsbury, deceased.

"To my cousin, John J. D. Kingsbury, I leave my property at Waterbury, Conn., and in addition thereto five thousand dollars. I trust he will expend it in completing his education.

"The remainder of my property of every description I leave to my devoted wife, Eva. I desire, moreover, that the

provisions of this will be so carried out that the yearly income of my wife for her own personal support shall never be less than two thousand dollars.

"As executors I name Ambrose E. Burnside, of Rhode Island, and Capt. John Taylor, Commissary Department, U. S. Army.

"Signed at Fortress Monroe, Va., March 25, 1862.

"HENRY W. KINGSBURY,

"*First Lieutenant 5th Regiment Artillery, U. S. Army.*"

Lieutenant Kingsbury was killed at the battle of Antietam on the 17th of September, 1862.

On the 18th of July, 1870, the plaintiff herein, suing by Corydon Beckwith, his next friend, instituted an action in the Circuit Court of Cook County, sitting in equity, against Simon B. Buckner, Mrs. Buckner, Ambrose E. Burnside, Jane C. Kingsbury, John J. D. Kingsbury, Albert G. Lawrence and Eva Lawrence. The last-named defendant, as Eva Taylor, intermarried with Lieutenant Kingsbury on the 4th of December, 1861. The only child of that marriage was the plaintiff, who was born December 16, 1862, after the death of his father. His mother, subsequently, September 26, 1865, intermarried with Albert G. Lawrence.

It was alleged in that bill that the plaintiff's father died intestate, seized in fee-simple of the estate conveyed by the above deed of May 15, 1861, and that upon his death it passed to the plaintiff, subject only to the dower rights of his mother and grandmother, and to certain incumbrances outstanding against the property or some portions of it; and that by a decree rendered in a suit instituted in 1868 by Jane C. Kingsbury in the same court against Eva Lawrence, Albert G. Lawrence, himself, and one David J. Lake, (who assumed to act as the plaintiff's guardian,) John Woodbridge was appointed receiver of the entire income of the premises, accruing and to accrue, with power to lease and manage the property under the orders of the court, and with direction to pay out of such income to his grandmother, Jane C. Kingsbury, and to his mother, the sums to which they were respectively en-

titled; to provide for the maintenance and support of the plaintiff; and to pay the interest upon certain mortgages upon the property, as well as other expenses incident to its care and management.

Referring to the writing executed at Fortress Monroe, Virginia, on the 25th of March, 1862, the bill alleged that it was delivered to John McLean Taylor for safe-keeping; that neither at the time of his death, nor at any time thereafter, was his father an inhabitant or resident of Virginia, nor did he have any property in that State; that the Corporation Court of the city of Alexandria had no jurisdiction to admit said will to probate or record; that neither of the proceedings in that court, nor of those in the County Court of Cook County, Illinois, had Jane C. Kingsbury, Eva Lawrence, John McLean Taylor or himself any notice; that the plaintiff's father did not sign said paper in the presence of any attesting witness, nor was the same attested by any witness in his presence; that it was not executed with the requisite forms and solemnities to make the same available for the granting and conveying of the property therein mentioned, according to the laws of Connecticut, the place of his domicil, or of Maryland, where he died, or of the State in which any of his property was situated; that it was not entitled to probate in Illinois; that, nevertheless, Burnside, combining with the other defendants in that suit, alleged and pretended that it was a valid will for passing the title to property in Illinois, and said Jane C. Kingsbury, Mary J. Buckner, John J. D. Kingsbury and Eva Lawrence, named in said pretended will as devisees or legatees, claim under it, but without right, some interest in the said estate of the plaintiff.

The prayer for relief was that said instrument be declared invalid and of no legal force and effect as a last will and testament; that the proceedings relating to it in the County Court of Cook County be reversed and set aside, or declared to be null and void, as constituting a cloud upon plaintiff's title to the real estate hereinbefore described; that his right and title by inheritance to that estate as the posthumous son and only heir at law of the said Henry W. Kingsbury, deceased be

confirmed and established; that in the meantime Burnside, Buckner and wife, and John J. D. Kingsbury be enjoined and restrained from intermeddling with the said estate, or with the rents, issues or profits thereof, and from attempting in any way to obstruct or interfere with Woodbridge in the performance of his duties as receiver; and that on the final hearing of the cause the injunction be made perpetual.

On the 31st of October, 1870, Buckner and wife filed their joint and several answer to the bill.   Answers were also filed by Jane C. Kingsbury, Burnside and John J. D. Kingsbury, which put in issue all the material allegations of the bill.

Buckner and wife also filed October 31, 1870, a cross-bill against the plaintiff and their co-defendants Eva Lawrence, Albert G. Lawrence and Jane C. Kingsbury, which, after setting out all the material averments both of the bill and of their answer, alleged that the real estate of which Major Kingsbury died seized included all the lands described in the original bill; that while the legal title to the strip along the east branch of the North Branch of the Chicago River, seventy feet in width for the full length of the tract, was vested in Simon B. Buckner by deed of January 22, 1855, he had no beneficial interest therein, and Major Kingsbury was at his death its real owner; that the title to the real estate of which the latter died seized descended to and vested in Mrs. Buckner and her brother, subject to the widow's right of dower and to the incumbrances thereon; that the defendants were married when Major Kingsbury died, and in 1858 had issue to their marriage, a daughter, who was then living, by reason whereof defendant Simon B. Buckner became vested with a life estate as tenant by the curtesy initiate in the property vested in his wife; and that at the death of her father he, the defendant Buckner, had the full control and management of the real estate left by him, and retained such control until it was placed under the management of Ambrose E. Burnside some time in December, 1860.

In respect to the deed of May 15, 1861, by Buckner and wife to Lieutenant Kingsbury, the cross-bill showed that the value of the property covered by it was five hundred thousand dollars, and, except an undivided half of certain real estate of

small value in Connecticut, was the only property held by Mrs. Buckner, her brother being the owner of the other undivided half of the property described in that deed; that said deed was executed without the knowledge of the grantee, who was ignorant of its existence until several weeks after its execution, when he was informed of the facts in the premises; that it was sent by Buckner to his agent in Chicago with directions to file it for record, which was done on the 17th of May, 1861, and that constituted the only delivery of it ever made to the grantee; and that it was made without any consideration, contract, arrangement, bargain or promise whatever, and was not acknowledged in accordance with the laws of Illinois.

The cross-bill also alleged that the sole purpose of the deed of 1861 was to vest the title of the property thereby conveyed in the grantee, as naked trustee, and not to make to him a gift; that it was the intention of the cross-plaintiff Simon B. Buckner to waive all claim to it, to allow his wife the sole use and enjoyment thereof, and to place the control of it in her own family, but he claimed all his legal and equitable rights in the premises, and asked that the trust be enforced so as to enable him to carry his intention into effect, to which end he would assent to any decree conferring the sole control and benefit of the property upon his wife, her heirs and assigns; that in the month of December, 1860, the deceased and Simon B.. Buckner for themselves, Jane C. Kingsbury and Mrs. Buckner, made an arrangement with Ambrose E. Burnside, then residing in Chicago, to take charge of and manage the property for all the parties; and that Lieutenant Kingsbury never exercised any acts of ownership over, or asserted any interest in, the property inconsistent with said trust, and, if he had lived, would have recognized the equitable and just claim of the cross-plaintiffs, and reconveyed the same upon request.

The cross-bill then referred to the will of March 25, 1862, and alleged that the only property in Chicago vested in the testator at that date was the real estate left by his father, which descended to him and his sister, Mrs. Buckner, and that the only conveyance ever made to him of property in

that city, and the only property there held in his name for the use of any person, was that described in the deed of Buckner and wife of May 15, 1861; that prior to the making of that will the Chicago property had been used solely to receive the rents and profits, the testator, his mother and sister being treated as if each had been entitled to one-third; that the testator, who was only twenty-three years of age, recently from West Point, without business experience, and unacquainted with the rules of law, and acting under the impression that Mrs. Buckner was the owner of only one-third, made the provision in his will for Mrs. Buckner, with the purpose to declare said trust, and to restore to the control of his sister all the property described in the above deed; that, therefore, the will is a sufficient declaration in writing of the trust to take it out of the statute of frauds, if it was a trust within its provisions; and that said will was legally admitted to probate by the laws of Virginia, by a court having jurisdiction in such matters, and was certified and admitted to record in Illinois in conformity with its laws.

It further alleged: "And your orators further show that the said Henry W. Kingsbury, on the 23d day of October, 1861, wrote with his own hand a letter to his mother, Jane C. Kingsbury, and signed the same by his signature 'Henry,' in which, among other things, he wrote: 'I spent all the morning with Burnside, yesterday He stated, as I told you, that Simon had made over all the Chicago property that was held in his name to me. A new power of attorney is therefore necessary from you and myself. We made one out. I signed it. Burnside will send it to you.' And they aver that the reference in said letter by the words 'as I told you' was to a conversation between the said Henry W. Kingsbury and his mother, had in their last personal interview before the date of said letter, in which the said Henry W. Kingsbury expressly admitted that he held all the property of your orator, Mary K. Buckner, inherited from her father, in trust for a short time, and said that he would restore it all to her whenever she desired. And your orators show that the only delivery of said deed bearing date May 15, 1861, ever made, was

the filing of the same for record by the said Simon B. Buckner, as hereinbefore set forth."

The relief asked in the cross-bill was: That the deed of May 15, 1861, be declared null and void as to Mrs. Buckner; that it be declared a deed of trust to the father of the plaintiff for the use and benefit of the grantors or one of them; that the plaintiff be adjudged to hold the property described in it as a trustee in like manner, and required to reconvey to the cross-plaintiffs or to one of them, as may be determined by the court; that an account be taken of the receipts and disbursements from and about the property by the defendants; that the dower rights of Jane C. Kingsbury and Eva Lawrence be ascertained and fixed, and partition made of said real estate, and the property owned by the cross-plaintiffs restored to them as they might be severally entitled thereto; and that they have such other and further relief as was just and equitable.

By an order made November 25, 1870, Corydon Beckwith — no service of process having been made upon the infant — was appointed guardian *ad litem* for Henry W. Kingsbury on the cross-bill. The infant, by him, filed an answer, which distinctly put in issue the material allegations of the cross-bill, and restated substantially all that was set out in the original bill. Answers to the cross-bill were also filed by Lawrence and wife. To these answers replications were filed by Buckner and wife.

On the 31st of December, 1870, the cause being heard, it was adjudged that both the original and cross-suits be dismissed without prejudice. It was further ordered that the decree be entered as of the 24th of December, 1870. At the same time there was filed in the cause a certificate of all the evidence used on the final hearing in the Circuit Court.

Each party prosecuted an appeal. The case was heard in the Supreme Court of the State at its January term, 1871, and on the 5th of October, 1871, that court reversed the decree of the Circuit Court and remanded the cause with special directions as to the decree to be entered, and for further proceedings. *Kingsbury* v. *Burnside*, 58 Illinois, 310, 337.

The following extract from the opinion of the court shows the grounds as well as the extent of the reversal:

"The late Henry W. Kingsbury was, as this case shows, not only a trustee of the property for his sister, but he was an honest trustee. By the last act of his life, in this respect, he designed to, and did, admit the existence of the trust, and endeavored to execute it. Immediately after his death, his widow, one of the defendants, in a letter to the mother of her deceased husband, recognized and admitted the trust, so far as she was concerned, in the most express terms, and seemed distressed at the suggestion of any obstacle to its immediate execution. Though her relations in life, and to the *cestui que trust*, became afterwards changed by another marriage, yet it is incredible that if she has been cognizant of the efforts which have been made to conceal the most important item of evidence of her former husband's relation to this vast property, and to wrest it from its proper channel, she can view them otherwise than with feelings of sorrow and regret. Her conduct has been the subject of severe criticism by counsel, but we are inclined to believe that she, like the unconscious infant whose name appears as plaintiff in the original bill, is but the involuntary instrument in the hands of designing men, who stand in no such relation to the memory of the deceased trustee as does Eva Lawrence.

"The trust being sufficiently manifested and proved by writings, signed by the party who was, by law, enabled to declare it, it must be executed.

"This conclusion renders unnecessary any discussion of the question, made by appellants in the cross-bill, as to the sufficiency of the acknowledgment of the deed by Mary J. Buckner, or of the question made by appellant in the original bill as to the execution and probate of the will; because, if properly executed and admitted to probate, the will would be governed by the laws of this State, where the property is situated; and the posthumous birth of the infant Henry W. Kingsbury would, by those laws, operate as an abatement of all devises of property so situated. Gross' Statutes, p. 800, sec. 16, Wills. Besides, the testator was incapable of divesting the property,

held in his name, for the use of Mary J. Buckner, by any devise he could make.

"The decree of the court below, dismissing both bills without prejudice, must, therefore, be reversed and the causes remanded, with directions to that court to dismiss the original bill absolutely, and to grant the relief prayed in the cross-bill, by a decree establishing the equitable title in Mary J. Buckner, to her proper share of the real estate described in the deed of May 15, 1861, declaring the trust, and requiring the proper conveyance of the legal title to her, divested of any life estate in her husband, (he having renounced the same,) and of all right of dower in Eva Lawrence; that an account be taken between said Mary J. Buckner and all other parties interested in the estate of Julius J. B. Kingsbury, deceased, according to the rules and practice of the court of chancery in such cases, and it be decreed accordingly."

The cause was redocketed in the Circuit Court of Cook County, and on the 13th of November, 1871, in pursuance of the special directions of the Supreme Court of Illinois in its mandate and opinion, the original bill was dismissed for want of equity. It was also ordered and adjudged, pursuant to such mandate and opinion, that the master in chancery make, execute, acknowledge and deliver a deed conveying, for Henry W. Kingsbury, the infant defendant to the cross-bill to Mrs. Buckner, the real estate and premises conveyed by the deed of May 15, 1861, divested of any life estate in her husband.

It was further ordered and adjudged, that partition be made between Henry W. Kingsbury and Mrs. Buckner, as tenants in common of the real estate inherited from Major Kingsbury, (one undivided half of which was owned by each,) the share of the lots or lands assigned to the former to be subject to the dower rights of Jane C. Kingsbury and Eva Lawrence, and the share assigned to Mrs. Buckner to be subject to the dower rights of Jane C. Kingsbury. It was further adjudged that Eva Lawrence be enjoined from asserting any claim for dower in the property assigned to Mrs. Buckner. The accounting between the parties to the cross-bill, and the costs, and the question in regard to the dower of Mrs. Kingsbury, were reserved for the further order of the court.

The commissioners appointed to make partition made their report on the 22d of January, 1872, and the same was confirmed, February 12, 1872, except as to that part of the premises known as the Spencer tract, in respect to which objections had been filed in behalf of Kingsbury by his guardian *ad litem*. Under writs of assistance issued in favor of Mrs. Buckner on the 29th of January, 1872, she was placed in possession of the property assigned and confirmed to her. On the 26th of March, 1872, the court sustained a motion for leave to the receiver to pay Mrs. Buckner one-half of all moneys collected by him on policies of insurance. From that order the infant, by his guardian *ad litem*, prayed and was allowed an appeal to the Supreme Court of the State. It is stated that the exceptions filed for the infant to the reports were overruled on the 2d of August, 1872, and a decree entered confirming those parts of them to which exception had been taken, and declaring the parties vested with the title to the lands respectively set off and allotted to them. And from that decree the infant, by his guardian *ad litem*, prayed and was allowed an appeal.

The case was again carried to the Supreme Court of the State upon the infant's appeal, by his then guardian *ad litem*, (a new one having been appointed,) who assigned numerous errors in that court, among which were the following: That the court erred in rendering the decree of November 13, 1871; that it was rendered without proof against the infant, and was contrary to law; and that it was not in accordance with the mandate of the court, and was without jurisdiction in the Cook Circuit Court. The remaining assignments related, principally, to alleged errors in reference to the partition, the report of the commissioners, the distribution of insurance money and the apportionment of the incumbrances. Upon the hearing of this last appeal, the solicitor representing the infant and his guardian *ad litem* urged numerous objections to the proceedings in the Circuit Court among which were these: That the Circuit Court had no jurisdiction over the infant to render the decree of November 13, 1871, on the cross-bill of Buckner and wife; and that such decree was rendered without

sufficient proof, was collusively obtained against the infant, and was manifestly unjust. In connection with these general objections the solicitor of the infant presented many specifications of fraud alleged to have been practised by the former guardian *ad litem* of the infant in and about the proceedings culminating in the decree of November 13, 1871. Most of these specifications are again presented in the present suit, and will be hereafter examined.

At the September term, 1872, of the Supreme Court of Illinois, the last decree was reversed mainly upon the ground that Mrs. Buckner had no interest in what was called the Spencer tract. *Kingsbury* v. *Buckner*, 70 Illinois, 514. In reference to the attempt made upon that appeal to reopen the questions decided on the first appeal, the court said:

"A labored argument has been made to prove the error of the former decision of the court, and it is charged that fraud and collusion were practised, and incompetent testimony adduced, to obtain it. If this were true, we cannot determine questions so grave upon *ex parte* affidavits. If there have been fraud and collusion, the proper remedy would be in chancery, and then the parties assailed could have an opportunity of making a defence; or, if the decree is directed by the court of final resort, by an application for a rehearing.

"Upon the former hearing, after full argument, this court decided that Henry W. Kingsbury held the property conveyed by the deed from Mrs. Buckner and husband to him, as trustee; that the trust had been manifested by a writing; and that she had an equitable title to a share in the estate. The cause was remanded to ascertain her share, and not to determine the trust. The latter had been established by the declaration of this court. This appeal is prosecuted from the decree making partition, and can bring before us no other question, except questions incident to the order for partition. We cannot examine as to the merits of the original case, but only as to proceedings subsequent to the decision at the former hearing. . . The trust relation between the parties was established by the former decision, and the court has not the power to reverse it."

A rehearing was granted, and at the September term, 1873, of the Supreme Court of the State, the following opinion was delivered :

"*Per curiam :* A rehearing was ordered in this cause upon the present appeal, not for the purpose of reconsidering the case upon the merits, or to change, or, in any substantial sense, to modify our former decision, but to render the opinion of the court more explicit, and prevent misconception of its meaning. This seems demanded by the peculiar state of the record, which was inadvertently overlooked, and the language employed in the opinion, to which our attention has been called by the application for a rehearing.

"When the cause was before us upon a former occasion, the principal questions involved were definitely settled. The decree of the court below, dismissing both the original and cross-bills, was reversed, and the cause remanded, with directions to grant the relief prayed by Mrs. Buckner's cross-bill. 58 Illinois, 310. In pursuance of those directions, a decree was entered in the Circuit Court, November 13, 1871. This decree established the principal rights of the parties, and the court proceeded to carry them into effect, which involved the necessity of entering three subsequent decretal orders, and on August 2, 1872, another and final decree. This decree disposed of a controversy arising between the parties upon proceedings for partition, involving a claim by Mrs. Buckner, to a share in what is called the 'Spencer tract,' as a part of her father's estate, and by that decree her claim was allowed, from which an appeal was taken on behalf of the infant, Henry W. Kingsbury, to this court. No appeal was taken from the decree of November 13, 1871, but appeals were taken from some of the decretal orders intervening that and the final decree of August 2, 1872.

"Upon these appeals the whole record was brought to this court, and errors assigned, questioning the propriety of the decree of November 13, 1871, entered in conformity with the directions of this court, some of the intervening orders, and the final decree of August 2, 1872. The questions raised and attempted to be raised were all carefully considered, and the

.conclusion arrived at was, that no error could be assigned upon the first decree, entered in pursuance of the directions of this court; that the points made upon the intervening orders were not well taken, but that the decree of August 2, 1872, was erroneous and ought to be reversed, for the reasons given in the opinion. These views, however, are not clearly announced in the former opinion, and it follows also that the directions contained in the opinion which have no relation to the matters involved in the decree of August 2, 1872, are wholly inappropriate, and may be considered as withdrawn from the opinion.

"The judgment which we intended to enter was, that the several decrees and decretal orders antecedent to the final decree of August 2, 1872, and upon which error was assigned, be affirmed, but that the decree of August 2, 1872, concerning Mrs. Buckner's claim in the Spencer tract, be reversed, and the cause remanded for further proceedings in conformity with the former opinion, as herein explained and modified, and that each party pay half of the costs in this court."

It should be here stated that the present transcript does not contain the decree of August 2, 1872.

On the 7th of March, 1877, the death of Mrs. Buckner was suggested in the Circuit Court, and her daughter, Lily Buckner, was substituted in her place as a co-complainant in the cross-bill, and on the same day a decree was rendered in conformity with the opinion and judgment of the Supreme Court of the State, annulling so much of the deed executed by the master to Mrs. Buckner as conveyed to her one undivided half of the Spencer tract, and directing a conveyance of that tract to the infant, Henry W. Kingsbury.

The present suit was brought in the Circuit Court of Cook County, Illinois, on the 11th day of August, 1873, for Henry W. Kingsbury, by Eva Lawrence, his next friend, against Simon B. Buckner, Mrs. Buckner, Jane C. Kingsbury, John J. D. Kingsbury, Ambrose E. Burnside and Corydon Beckwith. As already stated, its object was to obtain a decree declaring the proceedings, above referred to, to be erroneous, fraudulent and void as to him, and restoring him to the possession and ownership of

the property embraced by the deed executed May 15, 1861, by Buckner and wife to his father. The bill is lengthy, setting forth substantially all the above steps taken in the suit· in the state courts, and going very much into detail in respect to the various grounds upon which he bases his claim to relief.

Shortly after this bill was filed, Beckwith, Buckner and wife, and Burnside, filed general demurrers. ·But no further steps were taken in the cause until· April 16, 1877, when it was dismissed for·want of prosecution. The order of dismissal was, however, set aside, and Buckner and Burnside, having obtained leave to withdraw their demurrers, filed May 17, 1877, (Mrs. Buckner having died,) a plea in bar, based upon the bill, cross-bill, pleadings, proceedings, and decrees in the former case. They also filed a joint and several answer. The cause was removed upon the petition of the plaintiff to the Circuit Court of the United States for the Northern District of Illinois, where, upon final hearing, and after replications were filed, in behalf of the infant, to both the plea and the answer of Buckner and wife, the suit was ordered to be abated as to Mrs. Buckner, the demurrers of Beckwith and Mrs. Kingsbury were sustained, and the bill dismissed for want of equity. This is the decree which has been brought here for review.

*Mr. Lyman Trumbull* for appellant.

I. A minor may file a bill to impeach a decree procured by fraud, or for error appearing upon the· face of the decree. *Lloyd* v. *Malone*, 23 Illinois, 43; *Kuchenbeiser* v. *Beckert*, 41 Illinois, 172; *Hess* v. *Voss*, 52 Illinois, 472; *Lloyd*·v. *Kirkwood*, 112 Illinois, 329; Story's Eq. Pl. § 427; *Gooch* v. *Green*, 102 Illinois, 507; *Wright* v. *Miller*, 1 Sandf. Ch. 103. The demurrers admit the fraud, collusion and falsification of the record as charged, and should have been overruled.

II. The· original suit of Henry W. Kingsbury, of Newport, in the State of Rhode Island, an infant seven years and seven months of age, commenced by Corydon Beckwith, as his next friend, July 18, 1870, was instituted without authority of said infant, without filing the bond required by the statute,

and gave the court no jurisdiction to pass upon his rights. Rev. Stats. Illinois, 1845, c. 47, § 13; *Lathers* v. *Fish*, 4 Lansing, 213; *Gray* v. *Larrimore*, 4 Sawyer, 638.

III. The so-called cross-bill of Buckner and wife against Henry W. Kingsbury, was, in fact, an original bill. It was not germane to the original suit, and whether germane or not, the Circuit Court had no jurisdiction of the same without the service of process upon the minor. The appointment of Beckwith guardian *ad litem* of the minor, who had no notice of the cross-suit, on motion of the complainants therein, was error, and did not give the Circuit Court jurisdiction to divest the minor of his real estate. *Campbell* v. *Campbell*, 63 Illinois, 462; *McDermaid* v. *Russell*, 41 Illinois, 489; *Hickenbottom* v. *Blackledge*, 54 Illinois, 316; *Wright* v. *Miller*, 1 Sandf. Ch. 123; *Walker* v. *Hallett*, 1 Alabama, 379; *Graham* v. *Sublett*, 6 J. J. Marsh. 44; *Rubber Co.* v. *Goodyear*, 9 Wall. 807.

IV. The Supreme Court of Illinois in the Central Grand Division had no jurisdiction of the appeal from the decree of the Circuit Court of Cook County, except by consent of parties. Art. 6, § 8, Constitution of 1870; Starr & Curtis' Stats. 131; *People* v. *Supervisors of Vermilion County*, 40 Illinois, 125; *Owens* v. *McKethe*, 5 Gilman, 79; *Goforth* v. *Adams*, 11 Illinois, 52.

V. Neither an infant, nor his guardian *ad litem*, could, by consent, confer jurisdiction on a court which would not otherwise have it. *Rhoads* v. *Rhoads*, 43 Illinois, 239; *Enos* v. *Capps*, 12 Illinois, 255; *Bank of the United States* v. *Ritchie*, 8 Pet. 128; *Fischer* v. *Fischer*, 54 Illinois, 231; *Wright* v. *Miller*, 1 Sandf. Ch. 103.

VI. It was not competent for the guardian *ad litem* to waive the giving of an appeal bond, by the cross-complainants, on their appeal to the Supreme Court. The giving of a bond is a prerequisite to the allowance of an appeal, and even if it were in the power of the guardian *ad litem* to waive it, the Supreme Court had no jurisdiction to entertain the appeal without such bond. Rev. Stats. 1845, c. 83, § 47; Gross' Stats. 1871, p. 516; *Simpson* v. *Alexander*, 5 Gilman, 260; *Chicago, Pekin &c. Railroad* v. *Trustees of Marseilles*, 104 Illinois, 91;

*United States* v. *Curry*, 6 How. 106; *The Lucy*, 8 Wall. 307, 309; *Washington County* v. *Durant*, 7 Wall. 694; *Villabolos* v. *United States*, 6 How. 81; *Lewis* v. *Shear*, 93 Illinois, 121; *Page* v. *The People*, 99 Illinois, 418; *Protection Ins. Co.* v. *Foote*, 79 Illinois, 361.

VII. The decisions of the Supreme Court of Illinois in assumed appeals from the decrees of the Circuit Court of Cook County, entered December 24, 1870, and August 2, 1872, and reported in 58 Illinois, 310, and 70 Illinois, 515, wherein the question of jurisdiction to entertain said appeals was not raised or passed upon by the court, cannot be set up in bar or be used as evidence against the appellant in this case, when it is made to appear that the Supreme Court did not have jurisdiction of said appeals. *Harris* v. *Hardeman*, 14 How. 333; *Borden* v. *Fitch*, 15 Johns. 121, 141; *S. C.* 8 Am. Dec. 225; *Hollingsworth* v. *Barbour*, 4 Pet. 466.

VIII. After the dismissal of the original bill by the Circuit Court of Cook County, November 13, 1871, the Circuit Court no longer had jurisdiction of said original suit or of the cross-suit, as such. No guardian *ad litem* of the minor was subsequently appointed, and all orders entered after that date in said original suit or said cross-suit, as such, were without jurisdiction and void.

IX. The exhibits offered in evidence by appellees, were inadmissible, and, if admitted, did not sustain the plea. The Circuit Court inadvertently found that no replication was filed to the answers of Buckner and Burnside. The replication is to be found.

X. It was error for the guardian *ad litem* to waive any of the rights of the minor, or to allow the introduction of illegal and incompetent evidence in support of the cross-bill, without objection. *Cartwright* v. *Wise*, 14 Illinois, 417; *Fischer* v. *Fischer*, 54 Illinois, 231. The testimony of Simon Buckner and Jane C. Kingsbury, parties to the cross-bill, and interested in the result of the suit, and upon which the Supreme Court based its decision, was incompetent, and it was the duty of the guardian *ad litem* to have objected to the same. Laws 1867, 183, § 2; Gross' Stats. 1871, 274; *Fischer* v. *Fischer*, 54 Illinois, 231, 235; *Reeves* v. *Herr*, 59 Illinois, 81.

XI. The whole record shows that the rights of the minor were not presented to the court; that the decree against him upon the cross-b'll was the result of negligence; that the entire proceedings in both the Circuit and Supreme Courts were a contrived case, carried on by the waiver of the infant's rights, and are not binding upon the infant, because "there was no earnest controversy." *Gaines* v. *Relf*, 12 How. 472, 537, 539; *Pacific Railroad of Missouri* v. *Missouri Pacific Railway*, 111 U. S. 505.

XII. The decision of the Supreme Court of Illinois, 58 Illinois, 310, was obtained by fraud upon a falsified record and should be set aside, and with it all decrees entered by the Circuit Court of Cook County in pursuance of such decision.

*Mr. W. C. Goudy* for appellees.

*Mr. John P. Wilson* closed for appellant.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

The first proposition advanced by appellant is, that a decree against a minor is subject to attack, by an original bill, upon the ground of error apparent upon the record, want of jurisdiction or fraud. Such is the rule in Illinois, in one of whose courts this suit originated, and by one of whose courts the decree sought to be set aside was rendered. *Lloyd* v. *Malone*, 23 Illinois, 43; *Kuchenbeiser* v. *Beckert*, 41 Illinois, 172, 177; *Hess* v. *Voss*, 52 Illinois, 472, 478; *Kingsbury* v. *Buckner*, 70 Illinois, 514, 516; *Lloyd* v. *Kirkwood*, 112 Illinois, 329, 337. In the case last cited, the Supreme Court of Illinois, after observing that there was considerable diversity of opinion as to whether a decree could be assailed by original bill for error merely, said: "In many of the States, however, including our own, a decree against an infant, like that against an adult, is absolute in the first instance, subject to the right to attack it by original bill, for either fraud or error merely; but, until so attacked, and set aside or reversed, on error or appeal, it is

binding to the same extent as any other decree or judgment. This right to attack a decree by original bill may be exercised at any time before the infant attains his majority, or at any time afterwards within the period in which he may, under the statute, prosecute a writ of error for the reversal of such decree."

Although the cases in Illinois concede the right, by original bill, to impeach a decree for fraud, and although this court has recognized that right as existing even after the decree has been affirmed by an appellate court, *Pacific Railroad* v. *Ketchum*, 101 U. S. 289, 296; *Pacific Railroad of Missouri* v. *Missouri Pac. Railway*, 111 U. S. 505, 519, none of the cases cited from either court sustain the proposition that a party, whether an infant or adult, against whom a decree is rendered by direction of the appellate court, can impeach it, by bill filed in the court of first instance, for errors apparent on the record, and which do not involve the jurisdiction of either court.

The decree which the appellant seeks to have set aside was rendered in conformity with the mandate of the Supreme Court of Illinois, requiring that the original bill in the first suit be dismissed, and that a decree be entered upon the cross-bill, adjudging the property in question to belong to Mrs. Buckner, and not to him. It is the one which the Supreme Court of the State held, in *Kingsbury* v. *Buckner*, 70 Illinois, 514, 516, 517, was beyond even its own control when questioned upon a second appeal in the same case. And this is in accordance with the settled doctrines of this court. In *Roberts* v. *Cooper*, 20 How. 467, 481, (cited in 70 Illinois, 517,) this court said : "It has been settled by the decisions of this court, that after a case has been brought here and decided, and a mandate issued to the court below, if a second writ of error is sued out, it brings up for revision nothing but the proceedings subsequent to the mandate. None of the questions which were before the court on the first writ of error can be reheard or examined upon the second. To allow a second writ of error or appeal to a court of last resort on the same questions which were open to dispute on the first, would lead to endless litigation." So, in *Durant* v. *Essex Co.*, 101 U. S. 555, 556, it is said :

" On a mandate from this court affirming a decree, the Circuit Court can only record our order and proceed with the execution of its own decree as affirmed. It has no power to rescind or modify what we have established. . . . The result of the appeal to us was an affirmance of what had been done below. After the appeal had been taken, the power of the court below over its own decree was gone. All it could do after that was to obey our mandate when it was sent down. We affirmed its decree and ordered execution. We might have ordered a modification so as to declare that the dismissal should be without prejudice. We did not do so. The Circuit Court had no power after that to do what we might have done and did not do." See also *Browder* v. *McArthur*, 7 Wheat. 58; *Tyler* v. *Magwire*, 17 Wall. 253, 284; *The Lady Pike*, 96 U. S. 461, 462; *Stewart* v. *Salamon*, 97 U. S. 361; *Humphrey* v. *Baker*, 103 U. S. 736, 737. It is obvious that the same principle must apply where a party, instead of prosecuting a second appeal, attempts by a bill of review, or by a new bill in the nature of a bill of review, to reach errors apparent upon the face of the record. In *Southard* v. *Russell*, 16 How. 547, 570 — cited with approval in *Kingsbury* v. *Buckner*, 70 Illinois 514, 516 — it was said : " As already stated, the decree sought to be set aside by this bill of review in the court below was entered in pursuance of the mandate of this court, on an appeal in the original suit. It is therefore the decree of this court, and not that primarily entered by the court below, that is sought to be interfered with. The better opinion is, that a bill of review will not lie at all for errors of law alleged on the face of the decree, after the judgment of the appellate court. These may be corrected by a direct application to that court, which would amend, as matter of course, any error of the kind that might have occurred in entering the decree. Nor will a bill of review lie in the case of newly discovered evidence after the publication, or decree below, where a decision has taken place on an appeal, unless the right is reserved in the decree of the appellate court, or permission be given on an application to that court directly for the purpose. This appears to be the practice of the Court of Chancery and House

of Lords, in England, and we think it founded in principles essential to the proper administration of the law, and to a reasonable termination of litigation between parties in chancery suits."

Among the cases cited in *Southard* v. *Russell* was that of *Brewer* v. *Bowman*, 3 J. J. Marsh. 492, in which the court, after observing that the remedy by bill of review for errors apparent upon the record was analogous to that of a writ of error said: "Hence, an affirmance in this court upon writ of error would bar a bill of review for any error which might exist in the record, but which was not assigned nor inquired into by this court. It follows that a reversal by this court, upon a writ of error (and we perceive no reason why a reversal upon an appeal should not have the same effect) with directions how to render the decree, and the rendition of the decree by the Circuit Court in pursuance of the mandates of this, would equally bar an attempt by bill of review to inquire into errors which be on the record, but which were not noticed by this court. . . . The decree rendered by the Circuit Court conformed to the opinion of this court. All attempts, therefore, to reach any error apparent upon the face of the record, prior to the decision of this court, came too late." See, also, *United States* v. *Knight's Administrator*, 1 Black, 488, 489; *Kimberly* v. *Arms*, 40 Fed. Rep. 548; Story's Eq. Pl. § 408; *Cleveland* v. *Quilty*, 128 Mass. 578, 579; *McCall* v. *Graham*, 1 Hen. & Munf. 12, 13; *Campbell* v. *Price*, 3 Munf. 227, 228; *Campbell* v. *Campbell*, 22 Grattan, 649, 674; *Jewett* v. *Dringer*, 31 N. J. Eq. 586, 590; *Rice* v. *Carey*, 4 Georgia, 558, 570; *Watkins* v. *Lawton*, 69 Georgia, 674, 675; *Ryerson* v. *Eldred*, 18 Michigan, 490; 2 Barb. Ch. Pr. 2d rev. ed. 92.

It has been suggested that the rule is different in the case of infants, and that the right of the infant Kingsbury to file an original bill to set aside the decree of November 13, 1871, for errors apparent on the record, was not affected by the fact that such decree was entered pursuant to the mandate of the Supreme Court of Illinois. In this view we do not concur. By the practice in chancery in Illinois, a decree against an infant is absolute in the first instance, and no day is given to

show cause after he becomes of age; and instead thereof the infant Kingsbury had five years after reaching full age within which to prosecute an appeal from the decree of December 31, 1870, dismissing his bill in the original suit. Rev. Stats. Illinois, 1845, p. 421, § 53; Rev. Stats. Illinois, 1874, p. 785; *Enos* v. *Capps*, 15 Illinois, 277; *Barnes* v. *Hazleton*, 50 Illinois, 429, 432; *Wadhams* v. *Gay*, 73 Illinois, 424; *Hess* v. *Voss*, 52 Illinois, 472; *Lloyd* v. *Kirkwood*, 112 Illinois, 337. But action, in his behalf, need not have been deferred for so long a time. It was competent for him, during his minority, by his *prochein amy*, to carry that decree to the highest court of the State for reëxamination, or file in the court rendering it an original bill to have it set aside for error apparent on the record. In *McClay* v. *Morris*, 4 Gilman, 370, 383, the court, after observing that whatever may have been the practice elsewhere the right of an infant to prosecute a writ of error was not to be doubted in Illinois, said: "If an infant sues out a writ of error, and a decree in this court is passed against him, such decree would be conclusive as well against him as it would have been had he attained full age, both under the provisions of the statute before recited and upon the principle that he is a plaintiff in error, and, as such, concluded by the judgment or decree." And in *Kuchenbeiser* v. *Beckert*, 41 Illinois, 172, 176, 177, it was said: "It was urged that the trial was had and the decree executed and carried into effect so long since that it should not now be disturbed. This would be unquestionably true, had the parties all been adults when the decree was rendered, or had the period elapsed which bars a writ of error after the minor becomes of age. But under our practice a minor defendant to a bill is entitled to his day in court, whether it is expressly reserved by the decree or not, and he may at any time during his minority, by his next friend or guardian, file an original bill to impeach a decree against him." *Lloyd* v. *Malone*, 23 Illinois, 43; *Lloyd* v. *Kirkwood, ubi supra; Richmond* v. *Tayleur*, 1 P. Wms. 734; Chambers on the Property of Infants, 798. The infant, by his *prochein amy*, having prosecuted an appeal to the Supreme Court of Illinois from the original decree rendered

in the suit brought by him, and having appeared by guardian ad litem to the appeal of Buckner and wife, is as much bound by the action of that court, in respect to mere errors of law, not involving jurisdiction, as if he had been an adult when the appeal was taken. In *Gregory* v. *Molesworth*, 3 Atk. 626, Lord Hardwicke said that "it is right to follow the rule of law, where it is held an infant is as much bound by a judgment in his own action, as if of full age; and this is general, unless gross laches, or fraud and collusion appear in the prochein amy; then the infant might open it by a new bill." So in *Lord Brook* v. *Lord Hertford*, 2 P. Wms. 518, 519: "An infant, when plaintiff, is as much bound and as little privileged as one of full age." See, also, *Brown* v. *Armistead*, 6 Randolph, 594; *Jameson* v. *Moseley*, 4 T. B. Mon. 414; *Hanna* v. *Spott's Heirs*, 5 B. Mon. 362.

It results that no inquiry can be made in this case in respect to errors of law apparent on the record, that do not involve jurisdiction of the original suit brought by the plaintiff when an infant.

But it is contended that the record shows upon its face a want of jurisdiction of the person of the infant and of the subject matter at the time the decree of November 13, 1871, was rendered. In *McDermaid* v. *Russell*, 41 Illinois, 489, 491, it was decided that when notice by publication against infant non-resident defendants in chancery was nugatory and void, the appointment of guardians ad litem for them, based upon such publication, "was also void, for they were not in court, amenable to any of its orders." To the same effect is *Campbell* v. *Campbell*, 63 Illinois, 462, in which the court declared the 47th section of the old chancery statute of Illinois, (Rev. Stats. Illinois, 1845, c. 21,) so far as it authorized a decree against infant defendants, without service of process on them, to be unconstitutional. In *Chambers* v. *Jones*, 72 Illinois, 275, 278, where the appearance of an infant defendant was entered by a guardian ad litem, appointed by the court to defend for her, it was said: "This did not give the court jurisdiction, and hence the whole proceedings were coram non judice. It is very clear no title passed to Jones by his purchase under the

decree.   The decree and sale were absolutely null and void,
and could be attacked directly or collaterally by the heirs
owning the fee.    The court had no jurisdiction to pronounce a
decree that would affect their interests, having no jurisdiction
of their persons by service of process or otherwise."    Upon the
authority of these cases it is insisted that, as there was no ser-
vice of process, actual or constructive, upon the infant Kings-
bury, in the cross-suit of Buckner and wife, he was not in court
in respect to the matters of that cross-suit, and, consequently,
the decree against him on the cross-bill was void; and that if
he could not be brought into the court of original jurisdiction
on the cross-bill merely by the appearance of his guardian *ad
litem,* he was not before the Supreme Court of Illinois upon
the appeal prosecuted in his name.    The defendants insist,
upon the authority of cases in this court, that no question can
be raised as to the jurisdiction of the Circuit Court of .Cook
County to pass the decree entered in conformity with the
mandate of the Supreme Court of the State.   *Skillern's Execu-*
*tors* v. *May's Executors,* 6 Cranch, 267; *McCormick* v. *Sulli-*
*vant,* 10 Wheat. 192; *Ex parte Story,* 12 Pet. 339; *Washington*
*Bridge Co.* v. *Stewart,* 3 How. 413; *Des Moines Nav. Co.* v.
*Iowa Homestead Co.,* 123 U. S. 552, 557.   But those were not
cases in which the party against whom a decree was rendered
was not before the court.    They do not sustain the proposition
that a decree, entered in pursuance of the mandate of an ap-
pellate court, but which is void by reason of the party not
being before that court, or before the court of original jurisdic-
tion, may not be attacked by an original bill.    It is, therefore,
necessary to inquire whether the Circuit Court of Cook County
had jurisdiction of the infant Kingsbury upon the cross-bill
filed by Buckner and wife.

In respect to the plaintiff's contention that he could not
have been brought into court as a defendant in the cross-suit,
except by summons or publication upon the cross-bill, it may
be said that in *Ballance* v. *Underhill,* 3 Scammon, 453, 461,
decided in 1842, it was held that the defendant in a cross-suit
must be brought into court in the same manner as he would
be in any other case.    But in *Fleece* v. *Russell,* 13 Illinois, 31,

32, the court, referring to the provisions of the Revised Stat-utes of 1845, c. 21, §§ 24 to 30 inclusive, relating to cross-bills, said : " Under these provisions of the statute, which have been passed since the decision in the case of *Ballance* v. *Underhill*, 3 Scammon, 453, no process is necessary to bring in the parties to the original bill; but the cross-bill is to be regarded as an adjunct or part of the original suit, and the whole together as constituting but one case." The same prin-ciple was announced in *Reed* v. *Kemp*, 16 Illinois, 445, 448. We are not referred to any case holding this principle to be inapplicable in the case of an infant complainant in an origi-nal suit, who is a defendant in a cross-bill. He is in court, by his original bill, and process is not required upon a cross-bill against him in the same suit. See also 1 Starr & Curtis, Anno. Stat. 407, 408, §§ 30 to 35 inclusive; Public Laws Illi-nois, 1871–2, p. 329.

But it is said that the subject matter of the original bill was simply the claim alleged to be asserted, in hostility to the plaintiff, under the will of his father, and that Mrs. Buckner's claim that the property conveyed by the deed of May 15, 1861, was held in trust for her, could not properly be made the subject of a cross-suit; that the jurisdiction, if any, ac-quired over the infant by the filing of the original bill did not extend to the new matter thus introduced by the cross-bill; and that, therefore, he was not before the court as to such new matter, by the appearance in his behalf of a guardian *ad litem*, without previous service of process, actual or construc-tive. This view cannot be sustained, for it is clear that the matter in respect to which the plaintiffs in the cross-bill sought relief was embraced by the original bill. The original bill asserted ownership by appellant, subject to certain incum-brances and rights of dower, of the entire real estate standing in his father's name at the time of his death, including that which Buckner and wife conveyed by the deed of May 15, 1861. It made distinct reference to that deed as the source of his father's title to the property here in question, and, there-fore, as the foundation of his own claim; and the relief asked was not restricted to a decree simply declaring the alleged

will of 1862 to be invalid. But a decree was sought by which his right and title to the property claimed to be held in trust for Mrs. Buckner by her brother should be confirmed and established, and all the defendants, including her, perpetually enjoined from intermeddling with it, or with its rents, issues, or profits. The subject matter of the original bill, so far as she was concerned, was the title and ownership of the property conveyed by the deed of May 15, 1861. The plaintiff claimed title under that deed, and by inheritance from his father. Mrs. Buckner claimed it under the same deed, but she averred that it was a trust deed. The allegations of the cross-bill related to that property, and, in answer to the plaintiff's demand that his title to it be confirmed, she demanded that the trust created by the deed of 1861 be declared, and her ownership established as against the plaintiff. It is true that the cross-bill alleged additional facts, but its subject matter was not the less, for that reason, germane to that of the original bill. Story's Eq. Pl. §§ 389, 392; 2 Daniell's Ch. Pr. 1548; *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. 339, 355; *Hurd* v. *Case*, 32 Illinois, 45, 49.

In *Jones* v. *Smith*, 14 Illinois, 229, 230, 231, 232, the relief sought was a decree establishing the plaintiff's title to certain real estate purchased at an execution sale under various judgments, and which had been conveyed by the judgment debtor to his daughter. The debtor defended upon the ground that the judgments were fraudulently obtained, and that of such fraud the purchaser was cognizant when they were rendered. He filed a cross-bill to have the sales set aside, and satisfaction of the judgments entered. Upon the question whether a cross-bill was proper in such a case, the court said: "A cross-bill is proper whenever the defendants, or any or either of them, have equities arising out of the subject matter of the original suit, which entitle them to affirmative relief, which they cannot obtain in that suit. No fitter case could be imagined for a cross-bill than the one which is presented by these pleadings. . . . No doubt, upon his answer, he [the defendant] was at liberty to prove the facts averred, but this would only defeat Smith's [the plaintiff's] claim to relief, while the same

facts, if established upon a cross-bill, would entitle him to have satisfaction of the judgments actually entered; without this he might be put to the necessity of proving them repeatedly." In *Lloyd* v. *Kirkwood*, 112 Illinois, 329, 336, in which the relief sought was a decree of partition, it was said that if the defendant, as matter of law, was entitled to have the decree upon which the plaintiffs based their right to partition set aside, on a bill for that purpose, such right was an appropriate matter for a cross-bill to an original bill filed to enforce such partition. So, in the case before us, while Mrs. Buckner might, perhaps, have defeated the plaintiff's suit by proving, under her answer, the facts set out in the cross-bill, it was competent for her in the same suit, to obtain such affirmative relief as was appropriate under proof that her brother did not become the absolute owner of the property by the conveyance of 1861, but was invested with the title in trust for her. It results that it was not essential to the jurisdiction of the Circuit Court of Cook County that there should have been service of process, actual or constructive, upon the cross-bill of Buckner and wife against the infant.

The jurisdiction of that court to entertain the original suit instituted July 18, 1870, is questioned upon the ground that it was commenced without authority of the infant, and because no bond for costs was filed by the guardian *ad litem*. This position is supposed to be justified by the following provisions of the Revised Statutes of Illinois : " Suits in chancery may be commenced and prosecuted by infants, either by guardian or next friend." Rev. Stats. Illinois, 1845, c. 21, § 4, Title, Chancery. "Minors may bring suits in all cases whatever, by any person that they may select as their next friend; and the person so selected shall file bond with the clerk of the Circuit Court, or justice of the peace before whom the suit may be brought, acknowledging himself bound for all the costs that may accrue and legally devolve upon such minor. And after bond shall have been so filed, said suit shall progress to final judgment and execution, as in other cases." Rev. Stats. Illinois, 1845, c. 47, § 13, Title, Guardian and Ward. Surely, these provisions are not to be interpreted to mean that no suit in the name of an

infant, by next friend, can be entertained, unless such next friend is selected by the infant. Such a construction is inadmissible. It would prevent a suit being brought by next friend, where the infant was so young as to be incapable of making a selection of a person to represent him. The section, first above quoted, is only a recognition of the general rule that "the court, in favor of infants, will permit any person to institute suits in their behalf," exercising, however, a "very large discretion on the one hand, in order to facilitate the proper exercise of the right which is given to all persons to file a bill on behalf of infants, and on the other, to prevent any abuse of that right and any wanton expense to the prejudice of infants." 1 Daniell's Ch. Pr. 69, 71; *Starten* v. *Bartholomew*, 6 Beavan, 143, 144; Macpherson on the Law of Infants, 364; Chambers on the Property of Infants, 757. In any view, the right to bring the suit does not depend upon the execution of a bond for costs, although, according to the letter of the statute, the next friend may be required to give such a bond before the suit proceeds to final judgment and execution. It is, also, said that there is nothing to show that Beckwith had any authority to sue as next friend, except that in his affidavit to the original bill he states that he is the next friend of the infant. It was not necessary to the jurisdiction of the court that he should exhibit with the bill evidence of special authority to bring it as next friend. It was in the power of the court, under whose eye he acted, at any time to inquire into his fitness to represent the interests of the infant, to remove him if he was a mere intermeddler, and to allow some one else to be substituted in his place. All the circumstances show that his institution of the original suit as next friend was with the knowledge and assent of the infant's mother and guardian. It is impossible to believe that he moved in the matter without the approval of those nearest to the infant. There is no ground to say that he proceeded without authority.

There is still another question of jurisdiction to be considered. By the constitution of Illinois "appeals and writs of error may be taken to the Supreme Court held in the Grand

Division in which the case is decided, or, by consent of the parties, to any other Grand Division." Illinois Constitution of 1870, Art. 6, §§ 2, 5, 8. The county of Cook is in the Northern Grand Division, and, unless the parties consent, cases from that county, which may be taken to the Supreme Court, must go to the court sitting in that Grand Division. The record discloses the fact that upon the entry, in the Circuit Court of Cook County, of the decree of December, 1870, dismissing both the original and cross-bills without prejudice, an order was made showing that the plaintiff by his next friend, Beckwith, prayed and was allowed an appeal to the Supreme Court, a bond, upon his part, being waived by the other parties; that the plaintiffs in the cross-bill prayed and were allowed an appeal, a bond on their part being waived; and that the parties, in open court, agreed that " such appeals may be prosecuted to and the record filed in the Central Grand Division at the next term, and that one record may be used for both appeals." Now it is contended that the Supreme Court of the State, sitting in the Central Grand Division, could not, except by consent, entertain jurisdiction of those appeals, and that the next friend and guardian *ad litem* was incapable, in law, of giving such consent. It is undoubtedly the rule in Illinois, as elsewhere, that a next friend or guardian *ad litem* cannot, by admissions or stipulations, surrender the rights of the infant. The court, whose duty it is to protect the interests of the infant, should see to it that they are not bargained away by those assuming, or appointed, to represent him. But this rule does not prevent a guardian *ad litem* or *prochein amy* from assenting to such arrangements as will facilitate the determination of the case in which the rights of the infant are involved. There is but one Supreme Court of Illinois, although for the convenience of litigants it sits in different places in that State, and, unless the consent of parties is given, can take cognizance, when holding its session in a particular Grand Division, only of cases arising in such division. But it is the same court that sits in the respective divisions; and a consent by the next friend or guardian *ad litem* that a case be heard in a particular division, could not possibly prejudice the substantial rights of

the infant. It is true that the consent of the plaintiff's next friend and guardian *ad litem*, that the case should go to the Central Grand Division, brought it to a more speedy hearing than it would otherwise have had, if such consent had not been given. But, certainly, it was not to the interest of the plaintiff that the final determination of his case should be delayed. The cases cited by counsel — *Owens* v. *McKethe*, 5 Gilman, 79; *Goforth* v. *Adams*, 11 Illinois, 52; and *People* v. *Supervisors of Vermilion County*, 40 Illinois, 125 — do not establish any different principle. They decide nothing more than that, in the absence of consent, the Supreme Court, sitting in one Grand Division, cannot take cognizance of a case from another Grand Division.

It is further contended that the Supreme Court of Illinois could not entertain the appeal from the decree dismissing the cross-bill of Buckner and wife without an appeal bond being executed by them, and that it was not competent for Beckwith to waive the giving of such bond. In support of this position counsel cite: *Chicago, Pekin &c. Railroad* v. *Trustees of Marseilles*, 104 Illinois, 91, and *Lewis* v. *Shear*, 93 Illinois, 121. In the first of those cases the party appealing had not filed a transcript of the record in the Supreme Court within the required time, nor taken any steps whatever to bring the case before the court for consideration. A motion to dismiss the appeal having been made, it was held that a mere waiver by the appellee of an appeal bond did not operate to perfect the appeal for any purpose. The court said: "There is no appeal here for us to act upon — nothing to dismiss. The case will be stricken from the docket." In the other case cited, which was an action of replevin, the question was whether the record showed the requisite amount involved to give the Supreme Court jurisdiction. As it did not, the appeal was dismissed, the court observing that it could not take jurisdiction of a case from the Appellate Court unless the record showed, in some manner, that it was one of which it could take cognizance. Neither case is an authority for the proposition that an appeal bond is essential to the jurisdiction of the Supreme Court of the State where the appeal is allowed and a tran-

script of the record is filed in due time. A mere failure to execute the bond within due time may be ground for dismissing an appeal, but does not deprive the court of the right to proceed to a determination of the appeal. So here, the waiver by the infant's guardian *ad litem* and next friend of a bond by Buckner and wife upon their appeal — the latter having waived an appeal bond on his part — did not affect the jurisdiction of the court. And such is the rule of practice in the Supreme Court of the United States. *Edmonson* v. *Bloomshire*, 7 Wall. 306, 311; *Richardson* v. *Green*, 130 U. S. 104, 114; *Evans* v. *State Bank*, *ante*, 330. The cases cited by counsel from the latter court do not announce any different rule.

We come to consider whether the record discloses any ground for holding that the decree of November 13, 1871, was obtained by fraud, as distinguished from mere error, or by collusion with the guardian *ad litem*. In considering this question we have not overlooked the fact that there were replications in the present suit to both the plea and the answer of Buckner and wife, although the final decree below inadvertently states that no replication to the answer was filed. The general contention, in behalf of the plaintiff, is that the original and cross-bills were not a genuine case, but were contrived, and the proceedings in the state court were conducted throughout, for the purpose of depriving an infant of his estate, without bringing attention to the real merits of his claim to the property in dispute. Of course, if the record disclosed a case of that character, the decree complained of would not constitute an obstacle in the way of giving relief to the plaintiff. What are the grounds upon which the charge of fraud and collusion is based?

It may be observed that no claim is made of newly discovered evidence, and that all the facts now relied upon to show fraud and collusion were disclosed by the record before the Supreme Court of the State, upon the first appeal, when the merits of Mrs. Buckner's claim to the property were examined. No effort has been made to prove any state of case different from that disclosed in the original and cross-suit. The issue as to fraud must be determined entirely by the record of the pro-

ceedings in the state court, and by such inferences as may be justly drawn therefrom; for no evidence, apart from that record, was introduced.

It is said that the attention of the court was not specially called to the various points now made against the theory of a trust advanced in behalf of Mrs. Buckner. That fact, if established, would not necessarily show fraud or collusion. But it does not appear what points were made in argument upon the first appeal to the Supreme Court of the State. Certainly, the errors assigned by the next friend in behalf of the infant were broad enough to cover every objection now raised against the right of Mrs. Buckner to the property. Those errors were, the dismissal of the original bill, the refusal to grant the relief asked by the plaintiff, and the admission of incompetent evidence against him. Under such an assignment of errors, it was competent for the *prochein amy* to contend, as one of the plaintiff's counsel insists he should have contended, that "the object of making the deed of May 15, 1861, was to leave the Buckners free to take sides in the civil war against the United States without jeopardizing this large estate in the city of Chicago;" and that a party making a deed for such a purpose was in no better position, in a court of equity, than one who makes a deed to defraud his creditors. For aught appearing in the record, this view was pressed upon the Supreme Court of the State. The absence from the opinion of that court of any reference to it, does not prove that the guardian *ad litem* and next friend failed to make the point, or that he purposely avoided allusion to it. If, in considering so grave a charge as that of fraud, we should indulge in conjecture as to what controlled the mind of the state court, the inference might be fairly drawn that, as this point arose out of the evidence, it was passed without notice, because the court regarded it as not sustained by the proof, or as one that ought not to control the decision of the case.

The depositions of Simon B. Buckner and Jane C. Kingsbury were taken in the suit brought by the infant in 1870, upon interrogatories by the plaintiffs in the cross-suit, and cross-interrogatories by Mr. Lawrence. It is contended that

these persons were incompetent, by the laws of Illinois, to testify in support of the cross-bill, and that the guardian *ad litem* failed to object upon that ground to their depositions. This charge of collusion fails altogether if they were not incompetent as witnesses. By the first section of a statute of Illinois, passed February 19, 1867, and which was in force when their depositions were taken, it was provided that "no person shall be disqualified as a witness in any civil action, suit or proceeding," except in certain specified cases, "by reason of his or her interest in the event thereof, as a party or otherwise, or by reason of his or her conviction of any crime, but such interest or conviction may be shown for the purpose of affecting the credibility of such witness." The second section provides that "no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein, of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as . . . heir . . . of any deceased person, . . . unless when called as a witness by such adverse party so suing or defending," except in certain cases that have no application here. The fifth section of the same act provides that "no husband or wife shall, by virtue of section one of this act, be rendered competent to testify for or against each other . . . except in cases where the wife would, if unmarried, be plaintiff or defendant, . . . and except, also, in cases where the litigation shall be concerning the separate property of the wife; . . . in all which cases the husband and wife may testify for or against each other, in the same manner as other parties may under the provisions of this act." Pub. Laws Illinois, 1867, p. 183.

It is clear from these statutory provisions that Buckner was not incompetent, by reason of his relation of husband, to testify in support of his wife's claim to the property, because if Mrs. Buckner had been unmarried she would have been a defendant in the original suit, and the plaintiff in the cross-suit, and also, because that suit concerned her separate property. In the cross-bill he joined with his wife in asking that the

trust intended to be created by the deed of 1861 be enforced, and gave his assent to any decree that would place the property under her sole control and preserve it for her benefit. This was regarded by the Supreme Court of the State as a renunciation by him of even a life estate, and the decree of 1871 proceeded upon that ground. Nor was he incompetent by reason of the inhibition contained in the second section of the act, because, although a formal party to the cross-suit, he was not directly interested in the event thereof, and was not, in the sense of the statute, a party adverse to the heir of his deceased brother-in-law. The only party adverse to the heir, in respect to the issues made by the cross-suit, was Mrs. Buckner. She could not have testified on her own motion, or in her own behalf, unless called by the opposite party. But, looking at the policy and language of those enactments, we perceive no reason why Buckner was not competent as a witness, in support of his wife's suit, under the first section of the act. We are, also, of opinion that Mrs. Kingsbury was a competent witness. She had no interest adverse either to appellant or to Mrs. Buckner. Her interest in the property was recognized by all the parties. No decree could have affected her rights. The fact that she was a party to the suit did not, of itself, disqualify her as a witness.

There are other facts in connection with the depositions of Buckner and Mrs. Kingsbury, which are relied upon to establish the charge of fraud and collusion upon the part of the guardian *ad litem*. They are these: He was not appointed guardian *ad litem* in the cross-suit until November 25, 1870, and yet he appears from the record to have assumed the position of guardian *ad litem* before that date, by assenting in writing, under date of November 22, 1870, that a *dedimus potestatem* might be sued out, on the 30th of November, to take the deposition of Buckner, thereby waiving the benefit of a notice of ten days given by the statute in such cases; and he failed to file cross-interrogatories to Buckner and Mrs. Kingsbury. These facts contain nothing of substance, when taken in connection with other circumstances. It may be that he did not, in fact, sign the above writing until after his appoint-

ment as guardian *ad litem*, and that he signed it without observing its date. Be that as it may, five days intervened between his appointment as guardian *ad litem* and the time named for suing out the commission to take Buckner's deposition. The statutory provision requiring ten days' notice for the suing out of a commission to take depositions is one for the benefit of the party against whom the depositions are to be read, and might be waived. The waiver of full notice, in respect to Buckner's deposition, was first signed by the attorney of Lawrence and wife, the latter being the mother and guardian of the infant. It was equally competent for the guardian *ad litem* or next friend to join in the waiver, unless it be assumed, as we are unwilling to do, that his fidelity is to be measured by his capacity and willingness to delay litigation, when there is nothing to be thereby accomplished. Nor is fraud and collusion to be imputed to Beckwith because he did not, after his appointment by the court, file cross-interrogatories to Buckner and Mrs. Kingsbury. Cross-interrogatories were filed by his partner in behalf of Mrs. Lawrence, and were of the most searching character. They were prefaced with formal objections, upon the ground of immateriality and incompetency, to more than twenty of the interrogatories relating to the deed of May 15, 1861, to the circumstances under which it was executed, and to the alleged trust in favor of Mrs. Buckner. And, at the hearing, objections were made to the competency of the evidence contained in the depositions for the cross-plaintiffs, but the depositions were received subject to all legal objections upon the ground of sufficiency, competency and relevancy. There is no suggestion that the cross-interrogatories which were filed did not cover the whole ground of dispute between the parties. It would have served no good purpose for the guardian *ad litem* to repeat them on behalf of the infant, for Mrs. Buckner was bound to support her claim by proof; and without filing cross-interrogatories the infant was entitled to avail himself of every fact to his advantage brought out by the cross-interrogatories upon the part of his mother.

Another badge of fraud is supposed to be found in the fact

that the decree dismissing the bill and cross-bill, without prejudice, was, in fact, rendered December 31, 1870, and yet was entered as of December 24, 1870, without objection from the guardian *ad litem.* We assume that the object of all this was to enable the parties to get the case before the Supreme Court at its session commencing in January, 1871, and have it there determined at an early day. There is nothing in all this to show fraud or collusion. Of course, the guardian *ad litem,* by technical objections, could have postponed the hearing of the case in that court until September, 1871; but there is no circumstance disclosed by the record tending in any degree to show that the infant would have profited by such delay.

But it is said that the failure of the guardian *ad litem* to apply for a rehearing of the original appeal is evidence of bad faith upon his part. We cannot assent to any such view of his duty. The opinion of the state court shows that the legal questions presented by the appeal were carefully considered, and there is no ground to suppose that its conclusion would have been modified if a rehearing had been granted. Be this as it may, we cannot agree that the mere failure of the guardian *ad litem* and next friend to apply for a rehearing raised any presumption of infidelity to his trust.

Some stress is laid upon the fact that Beckwith met this suit by demurrers to the bill, and did not file an answer. This does not show fraud or collusion. There was no need of making him a defendant. No relief was prayed against him. He was neither a necessary nor proper party to the relief asked. If he preferred to terminate the suit as to himself by a demurrer, it was his privilege to pursue that course.

In respect to the charge that the case was presented to the Supreme Court of the State upon a falsified or changed record, it is only necessary to say that there is no foundation for it in the record before us.

Without noticing other matters discussed by counsel, which we do not deem of importance, we are of opinion that the plaintiff has failed to show that the decree of November 13,

1871, or any decree subsequent to that date, was, in any degree, the result of fraud or collusion.

The decree is *Affirmed.*

MR. CHIEF JUSTICE FULLER took no part in the consideration or decision of this case.