# West Chicago Street Railroad Co. v. Joseph Johnson, by His Next Friend.

1. COMMON CARRIERS—*Of Passengers, When Not Relieved of Care, etc.*—Intramural carriers of passengers who invite the overcrowding of their cars for purposes of gain to themselves, are not to be relieved from the high degree of care the law requires of them, because one of their passengers lightly oversteps the limit of some rule or regulation, or resumes a position which for a temporary accommodation to the carrier he withdraws from, unless he be so warned of its dangers as to make it clear that he knew them and assumed the risk.

2. PRACTICE—*Next Friend—Waiver.*—If the defendant appear and plead, it is then too late to question the authority of the *prochein ami*, and the recital in the suit that the infant is suing by his next friend, is taken as conclusive that the order authorizing him to do so has been made.

3. DAMAGES—*$3,000 Not Excessive.*—A young man sued for personal injuries received by him while he was a passenger on board a cable car, and which were occasioned by the sudden flying back of an iron brake-lever, the end of the handle of which struck him on the right leg inflicting a wound three inches wide, extending from the knee on the outside of the right leg upwards for eight inches, through the tissues to the bone, the muscle lying in the track of the wound being cut. "The function of the muscle being to strengthen the leg as it is used in walking, he could not walk on his leg without using the muscle unless he held the leg stiff." It was held that $3,000 was not excessive.

Trespass on the Case, for personal injuries. Trial in the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding; verdict and judgment for plaintiff. Appeal by defendant. Heard in the Branch Appellate Court of the First District, at the March term, 1898. Affirmed. Opinion filed May 31, 1898.

ALEXANDER SULLIVAN, attorney for appellant; E. J. McARDLE, of counsel.

JOHN F. WATERS, attorney for appellee.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

This is an appeal from a judgment for three thousand

dollars recovered by appellee in an action for personal injuries. The injuries complained of were received by appellee while he was a passenger on board a cable car owned and operated by appellant, and were occasioned by the sudden flying back of an iron brake-lever, the end of the handle of which struck him on the right leg, inflicting a wound described by the surgeon who attended him, as " extending from the knee on the outside of the right leg upwards for eight inches, and extending through the tissues to the bone all the way, excepting the upper two inches; I suppose this wound was three inches wide.  *  *  *  The muscle lying in the track of the wound was cut.  *  *  *  The function of that muscle, with two others on the anterior surface of the leg, is to strengthen the leg—extend it.  *  *  *  It is used in walking. A man could not walk on his leg without using that muscle unless he held his leg stiff.  *  *  *  There was no injury to the knee joint;  *  *  *  there was no bone injured."

The car was a combination passenger and grip car, partly divided by an aisle, in which ordinarily no one but the gripman stands and the levers controlling the car are operated.

It was a rainy morning when the appellee boarded the car to come down town to his work, and there was sufficient evidence to justify the jury in finding that the train was so crowded as to warrant the appellee in pushing past other passengers into the gripman's aisle, where it appears it was not unusual for passengers to stand when riding on similar cars operated by appellant under like circumstances. Ordinarily there might not be any danger to a passenger so riding. But under conditions of defective grip machinery, track or slot, one or both of which apparently existed in this instance, whereby the grip machinery should be suddenly interfered with, and the grip lever suddenly loosened and thrown back with great force, it would be a very hazardous place in which to ride.

There was evidence tending to show that at the time in question several other persons were standing in the aisle, but appellee appears to have stood nearest to the gripman.

The accident happened after appellee had ridden in that position about two blocks, and there was conflicting testimony as to whether the gripman told appellee to move back, and motioned or pushed him back from the place where he was standing, but we fail to see any evidence that appellee was in any way warned that his position was one of danger, or more than temporarily inconvenient to the gripman, unless it may be said that his own senses were sufficient to give him such notice or knowledge.

Upon the facts of the case we have no hesitation in saying that they warranted the jury in finding negligence by appellant and due care on the part of appellee.

Of five instructions given at the request of appellee, two are complained of, but we think the objections to them are not well founded.

It is urged that appellant's twenty-fourth instruction was improperly refused. It was as follows:

" The jury are instructed that if they believe, from the evidence, that the defendant's gripman who was operating the grip car in question, requested the plaintiff to leave the position he was in, at or just before the time of the accident and the injury herein complained of; and if the jury also believe from the evidence that the plaintiff refused to do so, or at first did so and then went back to the same position when the gripman's back was turned; and if the jury also believe that the plaintiff's own conduct contributed in any way to bring about the accident to himself, which resulted in the injuries herein complained of, then the plaintiff can not recover and the verdict should be, not guilty."

However correct the general propositions of law may be that are so announced, as applied to the evidence in this case the instruction falls short and was properly refused.

There was evidence tending to prove that the cars were so crowded that appellee had no other place to stand. Under such circumstances, appellee having been invited by the appellant to become a passenger by the stopping of the train to receive him, and having in fact become a passenger, the question of whether the position he occupied was one

of necessity, and was consistent with the exercise of proper caution and care for himself, under the circumstances, were elements that should not have been omitted from the instruction.

Intramural carriers of passengers who invite the over-crowding of their cars for purposes of gain to themselves, are not to be relieved from the high degree of care the law requires of them, because one of their passengers lightly oversteps the limit of some rule or regulation, or resumes a position which, for a temporary accommodation to the carrier he withdraws from, unless at least he be so warned of its dangers as to make it clear that he knew them and assumed the risk. Here the jury had a right from the evidence to find that the request by the gripman, if he made one, for appellee to leave his position, was for a temporary accommodation to himself, and not because of any danger pointed out to appellee.

There were numerous objections by counsel for appellant to the argument to the jury by appellee's counsel, but the court made no ruling except as to one, and no exception was preserved to that ruling. We need say no more about the argued error in that regard.

The next contention by appellant is that appellee, being an infant, his suit by his next friend can not be maintained, because the record shows no previous authority or appointment by any court of his next friend, and no bond for costs was filed, as required by statute. Ch. 64, Sec. 18, Rev. Stat. Commenting upon the ancient practice of appointing a *prochein ami*, it was said in Chudleigh v. C. R. I. & P. Ry. Co., 51 Ill. App. 491: "This practice has fallen into disuse, and now if the defendant appear and plead, it is then too late to question the authority of the *prochein ami*, and the recital in the suit that the infant is suing by his next friend, is taken as conclusive that the order has been made. See also Kingsbury v. Buckner, 134 U. S. 650.

The question of excessiveness of damages remains to be considered.

The verdict of the jury was for $4,000, which was remitted to $3,000 in the court below.

The amount of damages in cases of this character is always a delicate question, and is often a difficult one.

The evidence shows most clearly that the injury was a painful one, and it was a long time—four or five months—before appellee could get around without attention and the aid of a crutch or cane.

But, according to appellee's own testimony, the main permanent injury is confined to a weakness in the leg and a dragging of his foot if he walks a long distance, and a "tired feeling" in the foot when walking or standing much. His earning capacity does not seem to have been interfered with, except while he was in the period of recuperation, and if it were an original proposition, it might better correspond with our understanding of the rule that compensation is all that the law allows in such cases, if the judgment had been for less.

Still, it being a case in which there was a clear right of recovery, we do not feel called upon to say the judgment was for too much, and it will be affirmed.

Mr. Justice HORTON does not concur in the foregoing opinion.