### PEACOCK, HUNT & WEST CO. v. THAGGARD et al.

### CAMP et al. v. PEACOCK, HUNT & WEST CO.

(Circuit Court, S. D. Florida. March 14, 1904.)

No. 1,308.

1. EQUITY PLEADING—CROSS-BILL—SUIT TO FORECLOSE MORTGAGE.

Where rights exist between codefendants in a suit to foreclose a mortgage in respect to the property involved which are affected by the matters alleged in the bill, and on account of which one defendant may be compelled, in order to obtain his full rights, to demand affirmative relief

against complainant, such as the cancellation of the mortgage on a part of the property, he is not confined to the allegations of his answer, but may file a cross-bill.

2. SAME—SUFFICIENCY OF CROSS-BILL—GROUNDS FOR AFFIRMATIVE RELIEF.

A cross-bill filed by a defendant in a foreclosure suit, setting up an executory agreement for the sale and transfer of a portion of the mortgaged property to him by his codefendant, the mortgagor, at a future date, states no ground on which the court can grant him present affirmative relief, and is demurrable.

3. JURISDICTION OF FEDERAL COURTS—SUIT BY ASSIGNEE—CITIZENSHIP OF ASSIGNOR.

Where a mortgage was given to secure a prior indebtedness from the mortgagor to the mortgagee, who were citizens of different states, the jurisdiction of a federal court of a suit to foreclose the mortgage is not affected by the fact that it also secured other indebtedness owing by the mortgagor to a third person, who was a citizen of the same state, which had been assigned to the mortgagee.

4. MORTGAGE TO SECURE FUTURE ADVANCES—PRIORITY OF SUBSEQUENT LIEN—NOTICE.

To entitle one to assert a lien on property superior to a mortgage thereon made to secure future advances to the mortgagor, by virtue of an unrecorded contract made by him with the mortgagor subsequent to the mortgage, but before advances had been made thereunder, the burden rests on him to prove notice to the mortgagee of his contract before the advances were made.

5. SAME—FORECLOSURE—ATTORNEY'S FEES.

Where a mortgagee is entitled to recover reasonable counsel fees in case of foreclosure, he is entitled to an allowance based on the actual services required in the suit, although the bill was taken pro confesso as against the mortgagor, and the litigation resulted from the contentions of a codefendant, who is the only party contesting the allowance.

Upon Demurrer to Cross-Bill.

Cooper & Cooper, for Peacock, Hunt & West Co.

L. E. Roberson and J. N. Stripling, for R. J. & B. F. Camp.

LOCKE, District Judge. The original bill filed herein is for the purpose of foreclosing a mortgage upon a large tract of real estate and certain items of personal property on account of certain indebtednesses which had arisen between the complainants and the defendant Thaggard and wife, ranging through a series of years. In such bill it is alleged that the codefendants Camp, who have since filed this cross-bill, claimed to have some interest in certain portions of the real estate, and asked that they be summoned to appear and answer, and show what right and interest they have, and what cause, if any, they have why a decree granting the prayer of the bill should not be made. These codefendants filed an answer, alleging that at a certain time previous to the accruing of some of the items of indebtedness alleged to have been the basis of the mortgage herein a contract between the codefendant Thaggard and themselves was duly executed, by which Thaggard bound himself to sell and convey to said orators in said cross-bill certain portions of the lands covered by the mortgage, after a certain

¶ 2. See Mortgages, vol. 35, Cent. Dig. §§ 1329, 1330.

¶ 3. Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

lapse of time, for $1 per acre; that such contract was made and entered into prior to certain items of indebtedness which are included in the mortgage sought to be foreclosed; that at the expiration of the time at which the transfer of the land was to be made by the Thaggards and paid for by their codefendants Camp a supplementary agreement was made by which the agreement was continued to be in force three years longer, and that at the expiration of that time the Thaggards were bound to convey to the Camps some several thousand acres of land, and the Camps were bound to pay therefor the sum of $1 per acre; that the Thaggards were permitted to continue in possession of the lands until it was to be transferred in accordance with said contract. In addition to said answer, said defendants Camp have filed a cross-bill stating the substance of the allegations of the answer, alleging that this contract of sale was prior to certain advances included in the amounts for which the mortgage is sought to be foreclosed, and that by such contract they took a prior right to and interest in such property, and prayed that the matter be inquired into, and that not only they be held to have a prior right, under such contract and agreement, to such lands, but that the mortgage to that extent should be held and declared to be void and of no effect as against them, and should be canceled. To this cross-bill a demurrer has been filed, contending that the right of the codefendants could not be litigated in a suit for the foreclosure of a mortgage, that all the allegations of benefit to the defendants Camp could have been made and relied upon in the answer, and that no affirmative relief could be granted as against the complainant or the codefendant Thaggard under such cross-bill.

I think the law may be plainly and briefly stated that, where the allegations of a cross-bill show facts which would, upon any reasonable construction, justify the cancellation of a contract or agreement which has been made the basis of the original suit, or where any defendant wishes affirmative relief by transfer to him of the legal title of the whole or a portion of the premises in question, a cross-bill will lie; that where rights exist between codefendants growing out of and involved in the matters and things alleged in the original bill, and by which one defendant may be compelled, in order to gain his full rights, to demand affirmative relief, he need not be confined to the allegations of the answer, but may go further, and demand that all questions involved in the suit be passed upon by the court. In this case not only does the cross-bill seek to set aside the effect of the mortgage sued upon, but prays that such mortgage be declared void and of no validity as against their rights in the property covered by the contract.

It is claimed in the demurrer that the original agreement to sell and transfer by the defendant Thaggard was suspended for three years, which time has not yet arirved, and that the only right the orators in the cross-bill could demand would be that they be permitted to enforce their rights at the expiration of the three years from the time of making the supplementary agreement; but a careful examination of that agreement does not show that the parties of the second part agreed to continue the time for the delivery of the lands to all lands, but limited such extension to "such lands as the party of the first part shall not have turpentined." There is no allegation that there are parts of the

lands which have been turpentined, or upon which the turpentining has been completed; but such question remains indefinite and uncertain. Under the allegations of the original bill the court has taken possession of the property by the appointment of a receiver, and the business of the defendant Thaggard is being conducted by him. If it should appear upon a hearing upon the cross-bill and answer thereto that there were certain lands that should be transferred under the contract, and that the mortgage, upon determining the priorities of interest, does not reach such land, might not the court in removing the receiver restore such lands to the Camps, rather than to defendant Thaggard? In the case of Kingsbury v. Buckner, 134 U. S. 650, 10 Sup. Ct. 638, 33 L. Ed. 1047, the complainant claimed to own certain real estate by inheritance from his father, to whom the defendant had conveyed by deed absolute, and prayed for a decree establishing his title. The defendant, by cross-bill, alleged that the deed was made for the purpose of placing the title in a trustee for one of the defendants. The questions submitted were held to be germane to the original bill. In the case of Morgan Co. v. T. C. Ry., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625, the facts seem to be very similar to this case. This was a suit for the foreclosure of a mortgage. A defendant was permitted to file a bill which was properly styled a cross-bill, in order to a complete decree upon the whole matter in dispute, and it was held that where, on the bill of the original complainant, possession of property had been taken by the Circuit Court of the United States, jurisdiction of the court had attached for all purposes, and in disposing of and determining the title of the property the court would examine the entire question presented, and grant affirmative relief wherever prayed in the cross-bill if found to be valid. In this case the original bill was for the foreclosure of certain mortgages. The orator in the cross-bill alleges prior rights to the property covered by the mortgages, and prays not only that the enforcement under the proceedings for foreclosure be denied, but that such mortgages be considered invalid and canceled. Such affirmative relief could not be given on an answer in the absence of a cross-bill. The property is in the possession of the court. It is for the interest of all parties that the title be finally determined. It is true that the allegations of the cross-bill have not shown a present right of possession or equitable title to the property in question, but whether the cross-bill may not be so amended as to show that certain portions of that property should be conveyed to the cross-complainant in event their allegations are shown to be true, and such construction of law as is asked for may be placed upon the relations existing under the contract, cannot be at present determined.

The allegations of the cross-bill as to the purpose of the agreement or the insolvency of the defendant Thaggard can give no right or immediate possession to or enforcement of transfer of title to the cross-complainants, but it would appear by an examination that possibly they may be entitled to some portions of that land in event the indebtedness of the defendant Thaggard to the complainant is shown to be subsequent to the rights of the complainant in the cross-bill, in which event it would seem that such cross-complainant is entitled to affirmative relief to some extent. Wherefore, although the allegations of the cross-bill do not

show a valid right at present for relief, yet it is considered that they show that there may be such a condition of affairs as, if properly alleged, may justify affirmative relief.

It will therefore be ordered that the demurrer to the cross-bill be sustained, with leave for the cross-complainant to have 10 days to amend the same, if so advised.

An amended cross-bill having been duly filed, a demurrer was sustained thereto, whereupon issue was joined between the complainant and the defendants Camp upon the original bill and answer thereto, and the matter duly referred to a master. The matter then coming on for a hearing upon the master's report, exceptions thereto, and a final decree, the following opinion and decree was pronounced:

LOCKE, District Judge. This cause has come on to be heard upon the several exceptions to the master's report. The first three exceptions are based upon the contention that the suit was brought upon an assignment of debts due to a citizen of the same state as the complainant. It is not considered that this is the case. It is true that the origin of the indebtedness, being an indebtedness to a third party, is set up in the plea; but the history of the transaction between the complainant and the respondent herein shows that the suit is not brought upon these assigned choses in action, but upon an indebtedness between the parties themselves, and the subsequent mortgage covers these items. The suit does not depend upon the rights of action assigned, but such rights of action had been recognized by the defendant herein, and the amounts thereon had been merged in and security given for an indebtedness between the two parties. Superior City v. Ripley, 138 U. S. 93, 11 Sup. Ct. 288, 34 L. Ed. 914. It is considered that this suit is brought upon a new contract, not involving a question between citizens of the same state.

This applies also to the fourth and fifth exceptions, which are based upon the same point, although in different words.

The sixth and seventh exceptions are based upon the principle that in a case of a mortgage to secure future advances the lien of a subsequent mortgage may be held prior to advances made after the notice has been given to the prior mortgagee. The integrity of this contention rests entirely upon the question as to when the complainant in this case may be held to have had notice of the contract between Thaggard and Camp. This contract, so made, was subsequent to a prior valid and existing lien upon the property claimed to have been transferred, and was subject to all the equities and rights of such mortgage. It is well settled that a mortgage covering future advances for the purpose of carrying on a special business will constitute a valid lien. Such advances as were made upon the prior mortgage were protected thereby, unless the mortgagee was informed and had knowledge that the party had executed a subsequent mortgage or contract constituting a lien. This contract was signed on the 28th of September, acknowledged by one of the parties on the 30th, and by the grantor on the 5th of October, but was not placed on record until the 23d of March the subsequent year. In the meantime advances were being made until

128 F.—64

at the date of the recording of said contract the amount due on the prior mortgage exceeded that which has been found by the master to be due. Whenever a party alleges notice of an important transaction upon which the rights of the parties depend, prior to the time of the placing of such contract on record, the burden of proof is upon the party making such allegations. The presumption is that notice to the public is only given by a recording of the document in the official records, and whoever alleges a prior notice and knowledge must substantiate such allegation by proof. In this I consider the defendants Camp have failed. They have introduced no testimony in their own behalf, but have attempted to procure from the testimony of the complainant's witnesses an admission to that effect, but the nearest approach to such an admission has been that the witness thinks it was about the time of the contract being placed upon the record that he first knew of it. He declares positively that they objected to the making of the contract, and presumed and supposed that it was not made at the time it was. If the information had been given, or the knowledge of it could have been brought home to the complainant in any way, it was the duty of the Camps to show such to be the case; which they have failed to do. It is not sufficient to contend that because a party could not state positively the time that he was first informed of a fact that it must have been at a time different from that which he represented according to the best of his knowledge and recollection. It does not appear that the defendants Camp made any examination of the amounts of advances due the complainant by the defendant Thaggard, but relied upon report and hearsay; nor has it been shown that in any way they gave notice to the original mortgagee. I therefore must find with the master that there was no reason shown why the advances made between the 28th of September and the 23d of March were not made in good faith, and upon the security of the existing mortgage.

It is also contended that there were certain large amounts paid between these dates which could not properly be classed as advances. The testimony shows that the payments were made upon drafts properly drawn by the defendant Thaggard, and were in the direct line of the business in which he was engaged, viz., purchasing land and timber for turpentine purposes. I therefore find that lien of the outstanding mortgage was superior to the contract of the defendants Camp.

The ninth exception presumes a finding that I do not think is justified by the record. I fail to find that any of the advances made after the knowledge of the contracts had come to the complainant herein have entered into the amount found by the master. It was within the discretion of the complainant to credit the amounts received from the defendant Thaggard upon such portions of the accounts, if they had been kept separate, in the absence of any direction or request to the contrary, as would protect the creditor to the greatest extent. In the event of a secured and an unsecured indebtedness, he had the right to credit the payments to his unsecured indebtedness, and leave the security on the amount still due.

It has been contended in behalf of the tenth exception that the amount of labor required from the complainant's counsel in the contest

between the complainant and the defendant Thaggard did not justify the amount of fee allowed by the master, because the bill was taken pro confesso, and that no continued litigation was required, and that there should not be taken into consideration, in determining such fee, the amount of labor which has been necessitated by the contest between the complainant and the defendants Camp. I cannot accept this view of the case. The defendants Camp have necessitated a large amount of litigation, which the counsel for the complainant have been compelled to meet, and I consider that the master was fully justified in finding that the fee allowed was a reasonable one for the nature and amount of labor performed by complainant's counsel. It will therefore be ordered that the exceptions to the master's report be overruled, and such report confirmed, and that the amounts found due therein be considered and held justly due by the defendants to the complainant, and fully secured by the mortgages alleged in said bill.

But while the complainant is entitled to the amount found to be due, there appear to be certain equities in regard to the sale of the lands involved in this suit which would justify a recognition by this court, and I know of no authority of law or principle of equity that permits the mortgagee to determine the mode and manner or order of sale of different pieces of property which might result to the injury of another, unless the same is required by a necessity of protecting the mortgagee in his entire rights. I have heretofore held in this case that the lands covered by the contract of the Camps only passed to them either at the option of the grantor, Thaggard, or by the lapse of three years from the time of making the supplemental contract (the 28th of September, 1903). If the lien of the complainant can be satisfied by the property not involved in that contract and the use of such timber land for turpentining until that time, the complainant has no reason to object. It will therefore be ordered that, if the amounts found due by the master are not paid within 10 days, the master shall proceed to advertise and sell all of the property covered by the several mortgages in said bill alleged, but in such sale the property not included in and covered by the contracts of Thaggard with the Camps be offered first in such lots as will bring the highest amounts; that then there be offered the right of working, for turpentine purposes, the lands covered by said contract, up to the 28th day of September, 1903; that, if the proceeds of such sales do not equal the amount found to be due by the master, the defendants Camp be permitted to redeem such lands as are covered by their contracts and remain unsold by paying to the complainant any residue of the indebtedness which may then remain due. The right of occupation of such land not to attach until the 28th of September, 1903. It is further ordered that if such defendants Camp, for the space of three days after the residue remaining due is settled and determined, fail and refuse to so redeem such lands, the master will then proceed to advertise and sell the same, and pay therefrom the residue of the indebtedness thus found, together with all the interest, costs, and charges herein incurred and expended.