NELSON et al. v. MEEHAN et al.

(Third Division.   Fairbanks.   August 14, 1905.)

No. 127.

1. JUDGMENT—OPENING—GROUNDS—FRAUD.
    The fact that a judgment was obtained through fraud or collusion is universally held to constitute a sufficient reason for

opening or vacating such judgment after the term at which it was entered.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, §§ 712–714.]

·2. SAME—TIME FOR APPLICATION.

A judgment obtained by willful fraud and perjury, whereby the court was misled, may be vacated after the term at which it was entered, and even after the decree has been affirmed by an appellate court.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, §§ 668, 712.]

:3. SAME—POWER TO VACATE.

The power to vacate or open a judgment or to set it aside is not dependent upon legislative recognition; it is a common-law power, possessed by the court as a part of its necessary machinery for the administration of justice, and hence may be exercised without the grant of special statutory authority.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 666.]

·4. SAME.

Judgment obtained by fraud and perjury. The case was appealed, and the judgment affirmed. Pending the final disposition of the case in the District Court, defendants by motion and affidavits disclosed the fraud and perjury, and moved to vacate. *Held,* that the court had jurisdiction to vacate, and so ordered.

[Ed. Note—For cases in point, see vol 30, Cent. Dig. Judgment, §§ 668, 712.]

Motion to vacate and set aside decree entered in this case August 17, 1904, for fraud. Objection that the court has no jurisdiction.

In December, 1903, the plaintiffs brought this suit in equity to enforce specific performance of the following contract:

"Gold Stream, Feb. 6, 1903.

"This agreement between M. Meehan and T. Larson, of the first part, and O. A. Nelson and G. M. Hensley, of the second part. In consideration of sinking three holes to bed rock on or near the lines ·of Three and Four above Dis. on Fairbanks, trib. of Fish of Fair-

banks Mining District of Alaska. In consideration they receive one-half interest in No. 3 above Dis. on Fairbanks cr.

                                                        "M. Meehan.

"Work to begin immediately. In case of water driving them out, will extend time until July 1, 1903.

                                                        "M. Meehan.
                                                        "T. Larson."

Plaintiffs alleged performance of their part of the contract, and the refusal of defendants to convey. Performance by plaintiffs was denied by the answer. Performance consisted in digging three prospector's holes or shafts from the surface of the ground to bed rock for the purpose of discovering what, if any, placer gold existed there. Upon the trial before this court without a jury the plaintiff Nelson testified that he had fulfilled the contract. He stated the depth of the various holes, and testified that he completed his contract. The sole question raised was whether holes Nos. 2 and 3 reached bed rock, and conflicting testimony was heard on that point. The court upon its own motion, and to secure evidence which was not otherwise offered, ordered an examination and survey of the proof shafts sunk by defendants, and the tunnels run therefrom toward the bottom of plaintiffs' shafts No. 2 and No. 3, to ascertain if the tunnels actually penetrated beneath plaintiffs' shafts. The survey was as indefinite and unsatisfactory as the defendants' evidence, and thereupon the court, basing its conclusions on Nelson's sworn statement, found that plaintiffs' shafts had reached bed rock, and that plaintiffs had performed their contract. Findings of fact and conclusions of law favorable to the plaintiffs were signed, and a decree for plaintiffs on August 17, 1904.

The court found as a fact:

"(3) That immediately thereafter plaintiffs commenced the performance of their part of said agreement, and continued until they completed the same, in putting three holes to bed rock on said claim as therein provided, within the lines and at the places therein desig-

nated, and that plaintiffs performed all the conditions of their agreements with the defendants to be performed under its terms."

And as a conclusion of law:

"(1) That plaintiffs performed all the conditions of their agreement with the defendants to be by them performed."

And decreed:

"That the plaintiffs are hereby declared and adjudged to be the true and lawful owners of a one-half interest of the placer mining claim described in the complaint and hereinafter described, and the said defendants be adjudged to convey said interest in said placer mining claim to the plaintiffs, and to execute a good and sufficient deed therefor to them of said property, and for judgment for one-half of the royalties and rents collected and received by said defendant from said described premises; said one-half of said rents amounting to the sum of fifteen hundred dollars."

Defendants appealed from this decree, and the action of the court was sustained by the Circuit Court of Appeals, Ninth Circuit (137 Fed. 731, 70 C. C. A. 165) on May 24, 1905, and its mandate was forwarded, and was filed in this court on the 13th day of June, 1905.

On April 17, 1905, plaintiffs applied for a receiver for the property, and after a lengthy hearing on affidavits on April 26th the application was denied upon defendants filing an additional bond in the sum of $15,000, and further agreeing to pay into court such proportion of the gold dust extracted from the claim by them as plaintiffs should be entitled to receive, upon the order of this court, in case the judgment appealed from was sustained by the Circuit Court of Appeals.

After the receipt of the mandate, this court, upon application of plaintiffs, ordered that defendants pay into court one-half of the net output of the mine from the beginning of work on the claim to the date of the order—June 14, 1905. Defendants protested, and offered to file their application to open the judgment for fraud, but the court refused to permit

the application to be filed until they had first complied with their offer and the court's order.   On July 25, 1905, defendants complied with the order of the court, deposited with the clerk $17,435, and on July 26, 1905, filed their action to vacate and set aside the decree of August 17, 1904, for fraud and perjury of plaintiff Nelson.   Defendants' application is supported by a large number of affidavits of miners, showing that a new proof shaft had been sunk by defendants on each side of plaintiffs' old prospect shaft No. 3, and these two proof shafts connected by a tunnel directly underneath plaintiffs' old shaft, whereby it is demonstrated that shaft No. 3 did not reach bed rock; that it was but 15 feet and 8 inches deep; that the distance from the bottom of the Nelson shafts to bed rock was and is more than 4 feet through undisturbed frozen gravel; that the plaintiffs did not complete their said contract; and that Nelson procured this court to sign the decree of August 17, 1904, by reason of his false statement that said shaft had been sunk by him to bed rock, well knowing that such statement was false and relied on by this court.

The following plan shows the relative positions of the Nelson & Hensley shaft No. 3 and the test shafts dug along-

side, and also the location and direction of the tunnels under it, and the distance of the bottom ice in the old shaft from bed rock.

On July 29, 1905, plaintiffs appeared specially, and objected that the court had no jurisdiction to entertain the motion to vacate the judgment.

Miller, West & De Journal and N. V. Harlan, for plaintiffs.
McGinn & Sullivan, for defendants.

WICKERSHAM, District Judge. This is a suit in equity brought by plaintiffs against defendants to enforce specific performance of a contract to convey an interest in real property. No execution has issued. No final record has been made or applied for by either party, as provided for by sections 264 and 380 of the Code of Civil Procedure. The original action is still pending, and the motion was made therein to open the judgment while plaintiffs were before the court demanding relief other than and in addition to that given by the judgment, and before execution or final record therein.

The plaintiffs "appear specially for the purpose of objecting to the jurisdiction of the court to entertain or pass upon the motion filed by the defendants in the above-entitled cause, and they appear for no other purpose." Plaintiffs have, however, heretofore entered a general appearance in the action, and the court will now treat their special objection as in the nature of a demurrer to the motion, and for the purpose of its consideration must treat the facts stated in support of it as admitted. The question for determination is, Upon the motion and the facts stated in support thereof has this court jurisdiction to open or vacate its judgment made herein on August 17, 1904?

1. The fact that a judgment was obtained through fraud or collusion is universally held to constitute a sufficient reason for opening or vacating such judgment after the term at which it

was entered. 17 Am. & Eng. Ency. of Law (2d Ed.) p. 827, and citations; 1 Black on Judg. (2d Ed.) § 321. Where a party obtains a judgment by his own willful perjury, or by the use of false testimony, which he knows at the time to be false, he practices a fraud for which the judgment may be vacated (17 Am. & Eng. Ency. of Law [2d Ed.] p. 828, and citations; 1 Black on Judg. § 323) ; and the Supreme Court of the United States has distinctly held that a decree may be impeached for fraud not appearing upon the face of the appellate record, "even after the decree has been affirmed by an appellate court" (Kingsbury v. Buckner, 134 U. S. 650, 670, 10 Sup. Ct. 638, 644 [33 L. Ed. 1047] ; Pacific Railroad v. Ketchum, 101 U. S. 289, 296, 25 L. Ed. 932; Pacific Railroad v. Mo. Pac. Ry., 111 U. S. 505, 519, 4 Sup. Ct. 583, 28 L. Ed. 498; Hilton v. Guyet, 159 U. S. 113, 207, 16 Sup. Ct. 139, 40 L. Ed. 95). The rule is stated in the syllabus to Kingsbury v. Buckner, supra, as follows:

"A decree is subject to attack by original bill for fraud even after judgment in the appellate court; but a party, whether an infant or adult, against whom a decree is rendered by direction of the appellate court, cannot impeach it, by bill filed in the court of first instance, merely for errors apparent on the record that do not involve the jurisdiction of either court."

In the case at bar the decree attacked was affirmed by the Circuit Court of Appeals, Ninth Circuit, but the ground of fraud upon which it is now attacked was not apparent upon the face of that record, and was not raised therein or considered by that court.

2. By the seventh section of the act of Congress entitled "An act providing a civil government for Alaska," approved May 17, 1884, it was provided:

"That the general laws of the state of Oregon now in force are hereby declared to be the law in said district, so far as the same may be applicable and not in conflict with the provisions of this act or the laws of the United States." Chapter 53, 23 Stat. 25.

One of these general laws of Oregon which was so extended to Alaska was section 102 of the Code of 1887, which reads as follows:

"Sec. 102 (100). The court may likewise, in its discretion, and upon such terms as may be just, allow an answer or reply to be made, or other· act to be done after the time limited by this Code, or by an order enlarge such time; and may also, in its discretion, and upon such°terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect."

This section was the statute law of Alaska from May 17, 1884, to the adoption by Congress of the Alaska Code of June 6, 1900, and was adopted as a part of that Code. Section 93, Code Civ. Proc. Neither in the Oregon Code nor in ours is fraud mentioned as a ground for vacating a judgment, and the argument is advanced that, since the statute provides for vacating a judgment for "mistake, inadvertence, surprise, or excusable neglect", the failure to mention fraud excludes it as a ground for vacating the judgment.

3. Such was not the rule in Oregon. In Ladd & Tilton v. Mason, 10 Or. 308, the Supreme Court of Oregon held that:

"Every court possesses the inherent power to vacate entries in its record of judgments, decrees, or orders, rendered or made without jurisdiction, either during the term at which the entries are made, or at any subsequent term."

In Marsh v. Perrin, 10 Or. 364, the court held that:

"Where, by the improper management or fraud of the opposite party, and by reason thereof, a judgment has been obtained which it is against good conscience to enforce, equity will interfere to restrain the use of an advantage thus gained."

And in Thompson v. Connel, 31 Or. 231, 235, 48 Pac. 467, 468 (65 Am. St. Rep. 818), the same court said:

"But it is made a question whether the statute comprehended fraud as a ground for such relief."

After discussing that question, the court concludes:

"So that, in either view, whether the acts complained of are such as may be denominated by one of the statutory appellations, or from their general nature and effect fall within the mischief sought to be relieved against, it is apparent that the statute is broad enough to afford ample relief by motion in the action."

The congressional adoption of the Oregon laws for Alaska also adopted their prior construction by the Oregon courts.

4. Nor is this court's general jurisdiction to relieve against a judgment obtained by fraud in anywise limited by the phraseology of section 93. Norton v. Atchinson Ry. Co., 97 Cal. 388, 30 Pac. 585, 32 Pac. 452, 33 Am. St. Rep. 198; McNeil v. McNeil (C. C.) 78 Fed. 834. The power to vacate or open a judgment or to set it aside is a common-law power possessed by the court as a part of its necessary machinery for the administration of justice, and hence may be exercised without the grant of special statutory authority. 1 Black on Judg. (2d Ed.) § 297. The power to set aside judgments for fraud or collusion, though expressly granted by statute in many of the states, is not dependent upon legislative recognition. It is a common-law power, inherent in all courts of record, and may be exercised after the expiration of the term at which the judgment was rendered, on the application of the party injured. 1 Black on Judg. (2d Ed.) §§ 321, 334.

5. The case of United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, was based upon an altogether different state of facts from the case at bar. That was a suit in chancery to vacate two judgments at law—the first rendered by the board of commissioners of private land claims of California, and the second the decree of the United States District Court affirming the first—both of which confirmed a Mexican land grant. The case was brought 20 years after these decrees had become final, after the original parties had died, and they tendered only issues which had been tried and determined in the former cases.

The case at bar, however, is between the same parties, in the original equity action, before execution or final record. The case of Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870, is more nearly in point with the case at bar, and the rule there laid down must govern. Mr. Justice Harlan, in delivering the opinion of the court in that case, said:

"According to the averments of the original petition for injunction filed in the state court—which averments must be taken to be true in determining the removability of the suit—the judgment in question would not have been rendered against Mrs. Marshall, but for the use in evidence of the letter alleged to be forged. The case evidently intended to be presented is one where, without negligence, laches, or other fault upon the part of petitioner, Mayer has fraudulently obtained judgments which he seeks, against conscience, to enforce by execution. While, as a general rule, a defense cannot be set up in equity which has been fully and fairly tried at law, and although, in view of the large powers now exercised by courts of law over their judgments, a court of the United States, sitting in equity, will not assume to control such judgments for the purpose simply of giving a new trial, it is the settled doctrine that 'any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery.' Marine Ins. Co. v. Hodgson, 7 Cranch (U. S.) 332, 336, 3 L. Ed. 362; Hendrickson v. Hinckley, 17 How. (U. S.) 443, 445, 15 L. Ed. 123; Crim v. Handley, 94 U. S. 652, 653, 24 L. Ed. 216; Metcalf v. Williams, 104 U. S. 93, 96, 26 L. Ed. 665; Embry v. Palmer, 107 U. S. 3, 11, 2 Sup. Ct. 25, 27 L. Ed. 346; Knox Co. v. Harshman, 133 U. S. 152, 154, 10 Sup. Ct. 257, 33 L. Ed. 586; 2 Story's Eq. Jur. §§ 887, 1574; Floyd v. Jayne, 6 Johns. Ch. (N. Y.) 479, 482. See, also, United States v. Throckmorton, 98 U. S. 61, 65, 25 L. Ed. 93."

The fraud complained of in Marshall v. Holmes was the production by the plaintiff Mayer of evidence that the defendant Mrs. Marshall had written a letter to her agent authorizing him to make the contract sued on—a perjury in support of the issue on trial, and upon which the judgment was based. The court held such a fraud to be a sufficient ground for impeaching the judgment. In the case at bar the perjury al-

leged was that certain holes had reached bed rock. The evidence was that subsequent to plaintiffs' labors therein the holes had so caved and filled with water and gravel that defendants could not at any time prior to the trial enter to ascertain that fact. The only person who knew the truth was plaintiff, and he is alleged to have willfully misstated it. The facts seem to me to bring the case clearly within the rule in Marshall v. Holmes.

Even if it be conceded that the defendants could, by extraordinary efforts in subterranean work, have so run a tunnel underneath these shafts that they could have demonstrated this perjury at the other trial, still, if it be an admitted fact that plaintiffs did not sink these shafts to bed rock in good faith, and did commit perjury at the trial upon the main issue, and did thereby so mislead this court as to procure it to decree specific performance when it would not have done so if the plaintiffs had stated the truth, ought this court in good conscience to enforce that decree? Ought a court of equity to enforce a decree obtained from it by a willful perjury of one party, against the prayer of the other for relief? Certainly not. If, as a matter of fact, the plaintiffs did not sink the holes to bed rock, they did not pay the consideration for the property for which they ask this court to decree specific conveyance; and if it is now shown to the court beyond doubt that they procured the court to enter the decree in their favor by willful false swearing upon that point, it would be a "fact which clearly proves it to be against conscience to execute" the judgment.

6. Some objection is suggested to the form of the proceeding. It is a motion supported by affidavits filed by leave of the court in the original case between the original parties before execution or final record; it is a continuation of the original suit. As was said by Mr. Justice Miller in Minn. Co. v. St. Paul Co., 2 Wall. (U. S.) 609, 633, 17 L. Ed. 886:

"An unjust advantage has been obtained by one party over another by a perversion and abuse of the orders of the court, and the party injured comes now to the same court to have this abuse corrected, and to carry into effect the real intention and decree of the court, and that while the property, which is the subject of the contest, is still within the control of the court, and subject to its orders. Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145."

A motion in the original suit is the proper form of proceeding. Thompson v. Connell, 31 Or. 231, 236, 48 Pac. 467, 65 Am. St. Rep. 818; Cowley v. Northern Pac. R. R. Co., 159 U. S. 569, 16 Sup. Ct. 127, 40 L. Ed. 263; 1 Black on Judgments (2d Ed.) §§ 303, 346, 347; section 723, Code Civ. Proc. Alaska.

The objection to the jurisdiction of the court was overruled, and, after notice and a full and searching inquiry, the former judgment was vacated for fraud and perjury practiced by the plaintiffs.