## 11731

### CITIZENS BANK v. HEYWARD

(142 S. E., 651)

1. APPEAL AND ERROR—FILING OF OPINION BY SUPREME COURT SITTING EN BANC HELD FINAL AND CONCLUSIVE, PRECLUDING SUBSEQUENT REHEARING (CONST. 1895, ART. 5. § 12).—Where Supreme Court sitting *en banc* with Judges of Circuit Court, has filed its opinion, petition for rehearing cannot be entertained and determined, since opinion is final and conclusive under Const. 1895, Art. 5, § 12, as between the parties to the proceedings, notwithstanding Court rule providing that a case shall not be remanded until the expiration of ten days after the filing of the opinion.

2. APPEAL AND ERROR—SUPREME COURT SITTING EN BANC LOSES JURISDICTION WHEN IT HAS ANSWERED QUESTIONS SUBMITTED BY FILING WRITTEN DECISION SIGNED BY MAJORITY OF JUSTICES AND JUDGES (CONST. 1895, ART. 5, § 12).—Supreme Court sitting *en banc* with Circuit Judges under Const. 1895, Art. 5, § 12, is called into existence by Supreme Court Justices only to decide certain questions, and loses jurisdiction when it has answered the questions submitted by filing with the Clerk of the Supreme Court its written decisions signed by the majority of the Justices and Judges. (Per Townsend, Sease, and Rice, Circuit Judges.)

    Justice Cothran, and Circuit Judges Mann, Dennis, DeVore, Shipp, and Mauldin, dissenting.

On petition for rehearing. Petition dismissed.

For former opinion, see 135 S. C., 190; 133 S. E., 709.

NOTE: This opinion of the Court *en banc* was omitted from the former report of this case.     —*Reporter.*

*Messrs. Hagood, Rivers & Young* for petitioner.

*Mr. N. B. Barnwell* opposed.

June 14, 1926.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

In the October, 1916, number of the *Lawyer & Banker*, there is an article by his Honor, Judge William H. Townsend, entitled "The Supreme Court of South Carolina," from which we quote as follows:

"The Court of Equity in South Carolina existed until the adoption of the reconstruction Constitution in 1868 separate and apart from the Law Court. The Court of Equity began with the Governor and Council. Three Judges were afterwards clothed with the jurisdiction, and in 1808, two additional Judges were appointed, and a Court of Appeals in Equity was established. This perished in December, 1824, and the whole appellate jurisdiction in law and equity, as again later in 1859, was vested in the above-mentioned separate Court of Appeals composed of three Judges having only appellate jurisdiction. This in the changes of 1835 and 1836 underwent another revolution, and the equity jurisdiction in first and last resort was vested in four Judges, called Chancellors. To prevent difficulties incident to this double appellate system, a Court of Errors was established in 1836, composed of all the Judges of both the Law and Equity Courts, sitting *en banc,* on constitutional questions, on questions where the Judges of either Court were divided in opinion, or where two Judges of either Court should require cases to be further heard. This practice of summoning all the Judges of the Superior Courts to sit *en banc* as a Court of Errors was retained under the Act of 1859 reestablishing a separate Court of Appeals, and is found in the present Constitution of 1895, as follows:

" 'In all cases decided by the Supreme Court the concurrence of three of the Justices shall be necessary for a rever-

sal of the judgment below, subject to the provisions hereinafter prescribed. Whenever, upon the hearing of any cause or question before the Supreme Court in the exercise of its original or appellate jurisdiction, it shall appear to the Justices thereof, or any three of them, that there is involved a question of constitutional law, or of conflict between the Constitution and laws of this State, and of the United States, or between the duties and obligations of her citizens under the same, upon the determination of which the entire Court is not agreed; or whenever the Justices of said Court, or any two of them, desire it on any cause or question so before said Court, the Chief Justice, or in his absence the presiding Associate Justice, shall call to the assistance of the Supreme Court all of the Judges of the Circuit Court: *Provided, however,* That when the matter to be submitted is involved in an appeal from the Circuit Court, the Circuit Judge who tried the cause shall not sit. A majority of the Justices of the Supreme Court and Circuit Judges shall constitute a quorum. The decision of the Court so constituted, or a majority of the Justices and Judges sitting, shall be final and conclusive. In such case the Chief Justice, or in his absence the presiding Associate Justice, shall preside. Whenever the Justices of the Supreme Court and the Circuit Judges meet together for the purposes aforesaid, if the number thereof qualified to sit constitute an even number, then one of the Circuit Judges must retire; and the Circuit Judges present shall determine by lot which of their number shall retire. [Article 5, § 12.]'

"In the Act of 1859 establishing the Court of Appeals, provision was made that whenever, upon the hearing of any cause or question, either at law or equity, before the said Court of Appeals, it shall appear to the Judges of the same, or any two of them, that there is any question of constitutional law or of conflict between the Constitution and laws of the State, and of the United States, or the duties and ob-

ligations of the citizens under the same, it shall be the duty
of the presiding appeal Judge to convene a Court of Errors
for the determination of the same, which Court shall con-
sist of all of the Judges of the Court of Appeals and of the
Judges of law and equity, the decision of which Court,
or a majority of the Judges sitting in the same, shall be
final and conclusive, and the presiding Judge of the Court
of Appeals shall also convene the said Court of Errors, at
the request of any two of the Judges of the Court of Ap-
peals, for the determination of any other cause or question
to be submitted to them, and the decision of the said Court,
or a majority of the members thereof, shall in all cases be
final and conclusive; and whenever the said Court of Er-
rors shall be convened, the presiding Judge of the Court of
Appeals shall preside over the said Court."

The question to be decided is whether under the Consti-
tution a petition for a rehearing in a case in which the
Court *en banc* has filed its opinion can be entertained and
determined, on the ground that it is not final and conclusive
of the questions decided.

The petition for a rehearing addressed to the Supreme
Court seeks to raise the same questions that were decided
by the Court *en banc,* as shown by the following statement
of Mr. Justice Cothran:

"The petition does not raise any questions which were
not considered in the hearing and opinions filed, but insists
that the majority of the Court *en banc* overlooked or mis-
applied the legal principles which lead to a contrary conclu-
sion."

It will be observed that the words "final and conclusive"
in our Constitution of 1895 are the same as those that were
construed by the Courts *en banc* prior to its adoption; and
the decisions rendered prior to the adoption of our Consti-
tution were to the effect that the losing party was not enti-
tled to a petition for a rehearing, for the reason that there

was then a provision that the decision of the Court *en banc* was "final and conclusive."

The rule of Court providing that the case should not be remanded until the expiration of ten days after the filing of the opinion is not in conflict with the provision of the Constitution that the decision of the Court *en banc* should be "final and conclusive." After the filing of the opinion rendered by the Court *en banc,* the case could not be remanded prior to the expiration of ten days, unless the Court so directed. The rule of Court was not intended to override the provision of the Constitution that the decision of the Court *en banc* should be "final and conclusive," but if such was its intention, it is unconstitutional. If the petition for a rehearing had raised a *new* or *different* question from that decided by the Court *en banc* quite another proposition would be presented. *State v. Adams,* 83 S. C., 149; 65 S. E., 220. That case shows that the decision of the Court *en banc* is "final and conclusive" of every question decided by such Court, *as between the parties to the proceedings,* even though the ruling then made may be subsequently overruled as between parties in another case.

If this Court *en banc* should decide that the former decision rendered by it was not "final and conclusive," then a petition for a rehearing might be filed by the *defendant* as well as by the *plaintiff,* and the litigation in the case might be endless. And if the words "final and conclusive" are not given this effect, then it would be far better for the country if they should be struck out of the Constitution. Otherwise they would only keep the promise to the ear and break it to the hope. Petition dismissed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES BLEASE and STABLER, and MESSRS. WILSON, HENRY, FEATHERSTONE, BONHAM, and TOWNSEND, CIRCUIT JUDGES, concur.

MR. JUSTICE COTHRAN, and MESSRS. MANN, DENNIS, DeVORE, SHIPP, and MAULDIN, CIRCUIT JUDGES, dissent.

CIRCUIT JUDGE TOWNSEND (concurring):

2. The above-entitled case was decided by the Court *en banc,* and its decision filed with the Clerk of the Supreme Court in December last. Within ten days and before the remittitur has gone to the Circuit Court a petition for rehearing has been filed. Can it be entertained? The inherent power of the Supreme Court to modify or vacate its decision during the term in which it is made, and before its judgment is remitted to the Circuit Court (Code Civ. Proc., § 27), is not doubted *(Empire Mining Co. v. Propeller Towboat Co.,* 59 S. C., 552; 38 S. E., 156). Does the provision in the Constitution, Art. 5, § 12, that "the decision of the Court so constituted," *i. e., en banc,* "or a majority of the Justices and Judges sitting shall be final and conclusive," prevent the Court *en banc* from reviewing a case after its decision is filed with the Clerk of the Supreme Court, but before the remittitur is sent from the Supreme Court to the Circuit Court. Like our former Courts of Error under the Acts of 1836 (7 Stats. at Large, p. 340), as noted by Chancellor Harper in *Pell v. Ball,* 1 Rich., Eq., 421, 426, and of 1859 (12 Stats. at Large, p. 648), the Court *en banc* differs materially from the Supreme Court, in that it is merely a consultative one, like the English Court of Exchecquer Chamber, whose judgments were authoritative, though the suitor had no right of appeal to it. The Court *en banc* is called into existence by the Justices of the Supreme Court, only when they may desire to consult with the Circuit Judges as to particular causes or questions. It has no fixed terms, and loses jurisdiction when it has answered the questions submitted *(Interstate Coal, etc., Co. v. Clintwood Coal, etc., Co.,* 105 Va., 574; 54 S. E., 593) by filing with the Clerk of the Supreme Court its written decision signed by a majority of the Justices and Judges *(Hinson v. Pickett,* 2 Hill, Eq., 354). Its functions are then exhausted. The Act of 1859 (12 Stats. at Large, p. 648), provided: "The

decision of which Court," *i. e.,* of Errors, "or a majority of the Judges sitting, shall in all cases be final and conclusive." I know of no instance where after filing its decision the Court of Errors entertained a petition for rehearing.

So, after final judgment in the House of Lords, or in the Judicial Committee of the Privy Council, no rehearing is allowed, unless for the purpose of correcting mistakes in the form of the decree. *Powers v. Sturtevant,* 200 Mass., 520; 86 N. E., 789. *Winchester v. Winchester,* 121 Mass., 130.

In *Perkins v. Lang,* 1 McCord, Eq., 30, 31, note, Chancellor Gaillard, with the concurrence of Chancellors De Saussure, Waties, and James, speaking of the first Court of Appeals in Equity, said:

"The Act of 1808 declares that the decrees of the Court of Appeals shall be final and conclusive, and it would be manifestly contrary to its intention to allow bills of review for error on the face of them."

In *Jeannerett v. Radford,* Rich., Eq. Cas., 472, Chancellor Harper said:

"As to the question of rehearing, the organization and practice of the Courts of Chancery in this State are so different from those of the country from which we derive our jurisprudence, that it is exceedingly difficult to apply the rules which obtain there. It was decided by the late Court of Appeals in Equity, that after a full and final hearing, the Court is not at liberty to open cases for rehearing, on account of error in the decree. *Burn v. Poaug,* 3 Desaus., 596; *Haskell v. Raoul,* 2 Tread., 896. The present Court of Appeals, in the case of *Haskell v. Raoul,* 1 McCord, Eq., 22, held the same opinion."

See, also, *Manigault v. Holmes,* Bailey, Eq., 283; *Carr v. Green,* Rich., Eq. Cas., 408; *Price v. Nesbit,* 1 Hill, Eq., 458; *Hinson v. Pickett,* 2 Hill, Eq., 355; *Hill v. Watson,* 10 S. C., 276, 277; and *Ex parte Knox,* 17 S. C., 209, 215.

In the case last cited Judge Kershaw said:

"Although these cases are based mainly on the terms of the statutes establishing the Courts which declare that their decrees shall be final, yet in principle they would seem to apply as well to the Courts as at present constituted. * * * Moreover, this practice is said in *Carr v. Green* to be conformable with that of all the Courts in England and the United States, the organization of which ·bears analogy to ours, which dictum is sustained by authorities both English and American."

In *State v. Adams,* 83 S. C., 152; 65 S. E., 220, it was held that the Supreme Court cannot set aside or in any way lessen the effect of a judgment rendered by the Court sitting *en banc.*

For these reasons, I concur in the order dismissing the petition for rehearing.

MESSRS. SEASE and RICE, Circuit Judges, concur.

MR. JUSTICE COTHRAN (dissenting) :· This case was originally heard by the Supreme Court at the spring term, February 11, 1925. The Court as then constituted consister of Justices Watts, Fraser, and Marion, and Acting Associate Justice W. C. Cothran; the Chief Justice and Justice Cothran being absent on account of illness.

On April 1, 1925, an opinion by Justice Fraser ,was filed, reversing the judgment of the Circuit Court. Justice Watts concurred generally, and Justice Marion concurred in the result; Acting Associate Justice Cothran dissented.

Upon petition for a rehearing the case was set down for reargument at the May term, which convened on May 11, 1925. At the latter term the case was continued to the June term, which was due to convene on June 8, 1925. In the meantime Justice Fraser died on May 21, 1925.

On May 29, 1925, upon proper certificate to the Governor under Constitution, Art. 5, § 6, Hon. R. O. Purdy was appointed Acting Associate Justice "to sit with the

Supreme Court of South Carolina as Associate Justice during the week of June 8th through June 13th" to hear and determine the cases set down in the Court roster for the June term, a copy of which was attached to the notice of his appointment.

Upon this roster the case above stated did not appear, and, accordingly, a second certificate and appointment were made on June 9, 1925, authorizing him to sit with the Court in hearing and determining a number of reargued cases, including especially by name the case above stated.

The case was reargued on June 12, 1925, before the Court, which was then composed of the Chief Justice, Justices Watts, Cothran, and Marion, and Acting Associate Justice Purdy.

On or about the 11th of September, 1925, an opinion prepared by Justice Cothran and concurred in by Justice Marion and Acting Associate Justice Purdy, the Chief Justice, and Justice Watts dissenting, was ready to be filed, affirming the judgment of the Circuit Court.

The Chief Justice and Justice Watts, acting under Article V, § 12, of the Constitution, expressed their desire that the Circuit Judges be called to the assistance of the Supreme Court in deciding the case. Accordingly on September 11, 1925, the Chief Justice signed an order "that the Circuit Judges be called to the assistance of the Supreme Court in the above-stated case." The time for the meeting was not stated in the order; the reason given for not doing so was to enable the Circuit Judges to study the questions involved. Thereafter the date was fixed for October 29, 1925. It appearing to the Chief Justice that that date was inconvenient, the meeting was postponed to December 7, 1925.

In the meantime Hon. R. O. Purdy was duly appointed Acting Associate Justice for the October term of the Court, and sat with the Court in the hearing and determi-

nation of all cases at that term and submitted prior to the November term. The November term of the Court was due to convene on November 12, 1925; and on November 5, 1925, upon similar certificate and order, Judge Purdy was appointed "as Associate Justice of the Supreme Court to hear and determine all cases for hearing at the November, 1925, term of the Supreme Court, all cases for· hearing at any *en banc* session of the Court that may be called prior to the December, 1925, term of the Supreme Court, and all cases submitted to the Supreme Court prior to the December term, 1925."

The Court *en banc* having been thereafter called to convene on December 7th, and the December term being due to convene on December 12th, Judge Purdy sat with the Court *en banc,* which duly convened on December 7th, before which the case was again reargued. The members of this Court who were present and participated were the Chief Justice, Justices Watts, Cothran, and Marion, and Acting Associate Justice Purdy; the Circuit Judges were Judges Mann, Rice, Wilson, Dennis, Townsend, Henry, Sease, Featherstone, Bonham, DeVore, Shipp, and Mauldin, stated in the order of their respective circuits; Judge Memminger of the Ninth Circuit having died, and Judge Johnson of the Fourteenth Circuit having heard the case on circuit, and, therefore, disqualified. Justice Marion, being then a member of this Court, of course had the right, and exercised it, of sitting upon the hearing of the case. He resigned on January 1, 1926.

On December 31, 1925, upon certificate and order, Justice Marion was duly appointed Acting Associate Justice "to determine and finish all unfinished cases heard by and submitted to him prior to January 1, 1926."

After the argument the members of the Court met in conference, the result of which was that Circuit Judges Rice, Townsend, Henry, Sease, Featherstone, Bonham, DeVore, and Shipp, eight in all, concurred in the opinion of the

Chief Justice, which was also concurred in by Justice Watts, making a total of ten votes for a reversal of the Circuit decree. Circuit Judges Mann, Wilson, Dennis, and Mauldin concurred in the opinion of Justice Cothran, which was also concurred in by Justice Marion and Acting Associate Justice Purdy, making a total of seven votes for an affirmance of the Circuit decree. Accordingly the opinion of the Chief Justice, reversing the circuit decree, was filed as the judgment of the Court on December 8, 1925.

Within ten days after the filing of the opinion the plaintiff filed a petition for a rehearing of the case upon grounds stated therein, which need not be repeated here, and obtained from Justice Cothran an order staying the remittitur until the further order of the Court. The petition does not raise any questions which were not considered in the hearing and opinions filed, but insists that the majority of the Court *en banc* overlooked or misapplied the legal principles which lead to a contrary conclusion. Thereafter, on May 14, 1926, the following order was proposed to be made upon the petition for a rehearing:

"This is a petition for reargument in the above-entitled case, in which the opinion was written by the Court *en banc* and has been filed.

"In a memorandum opinion on the petition for a rehearing herein, by Mr. Justice Cothran, he commences with these words: 'I shall proceed upon the principle that a matter is not settled until it is settled right.'

"It is, however, fully as important that there should be an end of litigation; and in order that there should be an end of litigation in those cases heard by the Court *en banc* the Constitution provides in Article 5, § 12, as follows: 'A majority of the Justices of the Supreme Court and Circuit Judges shall constitute a quorum. The decision of the Court so constituted or a majority of the Justices and Judges sitting shall be final and conclusive. The object of that provision was to make certain that there would be an end of liti-

13—S. C. R.—144

gation, and it could not have used stronger words than that a decision rendered by the Court *en banc* would be final and conclusive.

"The framers of the Constitution realized that unless the decision of the Court *en banc* was final and conclusive, there would practically be no end of litigation in those cases.

"If such had not been the intention of the framers of the Constitution they would have framed the provision to read as follows: 'The decision of the Court so constituted or a majority of the Justices and Judges sitting shall *not* be final and conclusive.' We shall not argue that the provision without the word 'not,' or with the word 'not' means the same thing.

"Our views are fully sustained by the case of *State v. Adams*, 83 S. C., 149; 65 S. E., 220.

"The petition for a rehearing, therefore, should be dismissed and it is so ordered.

"EUGENE B. GARY, C. J.
"R. C. WATTS, A. J.

"At this time we concur in the foregoing order, but as it appears to us that a constitutional question as to the power of the Court *en banc* to order a rehearing of a cause is involved, and that the proper tribunal to pass upon that question is that Court, we think such Court should be called to decide that question.

"EUGENE S. BLEASE, A. J.
"JOHN G. STABLER, A. J.
"I dissent:                    T. P. COTHRAN, A. J."

That was followed by the following order:

"A petition for a rehearing in the above-stated case having been filed by the respondent, and it appearing to the Court that a question has arisen as to the construction of the Constitution with reference to the finality of the judgment which has heretofore been filed by the Court *en banc* upon which this Court is divided, it is ordered that the

Judges of the Circuit Court be called to the assistance of the Supreme Court on Thursday, the 10th day of June, 1926, at 10 a. m., at Columbia, S. C., for the determination of the single question, whether under the Constitution a petition for a rehearing in a case in which the Court *en banc* has filed its opinion can be entertained and determined, and, therefore, be final and conclusive.

"Let a copy of this order be served upon the counsel for the respective parties, who will be heard by the Court *en banc* in argument upon the foregoing question.

"EUGENE B. GARY, *Chief Justice.*"

After argument of counsel upon the question stated, the following should be the conclusion of the Court:

To restate the question:

"Under the Constitution, where an opinion has been filed by the Supreme Court (constituted with the assistance of the Circuit Judges of the State), and the remittitur has been stayed by a Justice of the Supreme Court, can a petition for a rehearing be entertained and determined?"

The Constitution, in Article 5, § 12, provides:

"Whenever, upon the hearing of any cause or question before the Supreme Court, in the exercise of its original or appellate jurisdiction, it shall appear to the Justices thereof, or any three of them, that there is involved a question of constitutional law, or of conflict between the Constitution and laws of this State and of the United States, or between the duties and obligations of her citizens under the same, upon the determination of which the entire Court is not agreed; or whenever the Justices of said Court, or any two of them, desire it on any cause or question so before said Court, the Chief Justice, or in his absence the presiding Associate Justice, shall call to the assistance of the Supreme Court all of the Judges of the Circuit Court: *Provided, however,* That when the matter to be submitted is involved in an appeal from the Circuit Court, the Circuit Judge

who tried the cause shall not sit. A majority of the Justices of the Supreme Court and Circuit Judges shall constitute a quorum. The decision of the Court so constituted, or a majority of the Justices and Judges sitting, shall be final and conclusive."

Other portions of this section are not pertinent.

The position taken by those who deny the power of the Supreme Court, sitting *en banc,* to entertain a petition for a rehearing, is founded upon the concluding sentence in the foregoing section:

"The *decision* of the Court so constituted, or a majority of the Justices and Judges sitting, *shall be final and conclusive."*

While it is quite common to refer to "the Court so constituted" as the "Court *en banc,*" there is, as a matter of fact, no such Court, considered as an independent tribunal, separate and distinct from the Supreme Court (a species of super-Supreme Court). It has no supervisory control, no appellate jurisdiction, over the Supreme Court; in fact it is called together in cases only in which the Supreme Court, as ordinarily constituted, has failed to render a judgment, on account of the facts which require the calling in of the Circuit Judges; in which event the parties litigant are summoned before a Court, *still the Supreme Court,* but differently constituted from the ordinary elements, a Chief Justice and four Associate Justices.

The Constitution, Article 5, § 1, provides that: *"The judicial power of this State shall be vested in a Supreme Court"* and other Courts named. There is no provision there or anywhere else in the Constitution for a "Court *en banc.*" That is no more than a convenient description of the Supreme Court sitting with the Circuit Judges.

Article 5 § 12, provides that under the circumstances detailed, "the Chief Justice * * * *shall call to the assistance of the Supreme Court all of the judges of the Circuit Court"*

to hear and determine the matter at issue. There is no provision for a review of the action of the Supreme Court, for it has taken none except to call the Circuit Judges to its assistance. If the constitutional provision had been "the Chief Justice shall call to the assistance of the Supreme Court three distinguished lawyers of the state," it could not be contended that the Court so constituted was not still the Supreme Court, but differently constituted. The judgment rendered by the so-called "Court *en banc*" would necessarily be the judgment of the Supreme Court and so remitted to the Court from which the appeal was taken, for there is no provision for any other judgment.

Speaking of the jurisdiction of the Supreme Court, Article 5 § 4, provides that the *Supreme Court* shall have appellate jurisdiction in certain cases. We find nowhere any jurisdiction conferred upon a separate tribunal known as the "Court *en banc.*" The circuit Judges are called in with more than advisory powers; each one has a voice in determining what the judgment of the Supreme Court, of which for the time being he is a component part, shall be, in the matter presented. The Supreme Court is given appellate jurisdiction in chancery cases, and sits as a Court for the correction of errors at law. We find no such jurisdiction conferred upon the "Court *en banc,*" as a separate tribunal.

The Code, Section 26 and following, specifies in detail the jurisdiction of the Supreme Court, not of the "Court *en banc.*" Section 27 provides that the *Supreme Court* may reverse, affirm, or modify the judgment, order, or decree appealed from. The clerk of the Supreme Court is directed to attach to the judgment remitted to the Court below, a copy of the opinion *of the Supreme Court.* Section 29, which is a copy of the constitutional section, provides: "In all cases decided by the Supreme Court the concurrence of three of the Justices shall be necessary for a reversal of the judgment below; subject to the provisions hereinafter prescribed"—which are the provisions under which

the Circuit Judges are called to the assistance of the Supreme Court, showing that the judgment in the latter case is still the judgment of the Supreme Court, but arrived at in a different way. Section 645 regulates appeals *to the Supreme Court.*

It is probable that the term "Court *en banc*" is but a reminder of the system which once prevailed in this State, when there were six law judges, holding the law Circuit Courts in the six Circuits, and three chancellors holding the Chancery Court. The six law Judges met as a Court of appeals at law; the three Chancellors, as a Court of appeals in equity; and in certain cases the six law Judges and the three chancellors met as the Court of Errors; all of them separate and distinct appellate Courts. If, then, as appears clear, the "Court *en banc*" is but a designation of the Supreme Court, sitting with the assistance of the Circuit Judges, the power of the Supreme Court to entertain petitions for rehearing, while the remittitur is being stayed, has never been questioned. As long as the remittitur is stayed, the judgment of the Supreme Court is absolutely under the control of the Court. As has been done in scores of instances, the opinions have been altered to conform to suggestions of interested attorneys; opinions have been withdrawn and others substituted; opinions have been withdrawn entirely and rearguments ordered. It is absolutely essential to the administration of justice, and an inherent power of an appellate Court which may have a passion for justice and right.

If it should be, as may be contended, that the "Court *en banc*" is a supercourt, of greater power than the Supreme Court, is it not a little remarkable that the "great Court" should have less authority than the inferior one? With the experience which most of us have had with hearings and consultations of the "Court *en banc*," where from necessity the time to study a case is so limited, the necessity to reserve this power is greater than with even a Circuit Court.

As a matter of recorded fact, since the opinion and judgment was filed, after the hearing before the "Court *en banc*," upon more deliberate consideration, three of the members of the Circuit Bench, doubtless but not necessarily, for the reason of a change of opinion upon the merits of the appeal have approved the petition for rehearing. In the order proposed by the Chief Justice, the remark of the writer of this opinion, "I shall proceed upon the principle that a matter is not settled until it is settled right," is replied to with the statement: "It is, however, fully as important that there should be an end of litigation."

The learned Chief Justice has not been advertent to the fact that on September 11, 1925, the opinion of the Court prepared by the writer hereof, and concurred in by Mr. Justice Marion and Mr. Acting Justice Purdy, was ready to be filed, and that upon his motion, seconded by Mr. Justice Watts, both of whom dissented from the majority opinion, the "Court *en banc*" was called. The question is suggested whether a speedy determination of litigation is a matter so imperative that a judgment which has not the mature sanction of a majority of the Justices and Judges shall be published to the world as one that has?

The stress of the opposition is in the sentence in the section which has been quoted: "The *decision* of the Court so constituted, or a majority of the Justices sitting, *shall be final and conclusive.*" "The Court so constituted" is manifestly, from the first sentence in the section, the Supreme Court sitting with the assistance of the Circuit Judges. The decision of that Court is the decision of the Supreme Court, and is remitted to the lower Court. Up to that time it is in the absolute control of the Court so constituted. Under ordinary conditions, would it be contended that the Supreme Court had *decided* a case the moment that the opinion was filed? We do not so apprehend. Until the ten days have elapsed, the judgment of the Court is in suspense, waiting for the possible exercise of the right and duty of every ap-

pellate Court to rectify an error. Of course after the re-
mittitur has been sent down the appellate Court loses juris-
diction of the case, and its decision necessarily becomes final
and conclusive. Those words in the section add nothing to
what inevitably ensues; they manifestly were inserted to
give effect to a majority vote, and were not intended to shear
the tribunal of a most salutary power.

The following authorities fully sustain the position that
the power to grant a rehearing as long as the case is in the
breast of the Court, as it must be until the remittitur has
gone down, is indisputable; the Court has absolute control
over the judgment. "The power to vacate or set aside judg-
ments is a common-law power, inherent in Courts of general
jurisdiction and possessed by all Courts of record as in-
cident to their existence." *In re Rochester Sanitarium &
Baths Co.* ( C. C. A.), 222 F., 22. *Hobson Co. v. Ala. Co.*,
189 Ala., 481; 66 So., 622. *Nelson v. Meehan,* 2 Alaska,
484. *Mendola v. Surety Co.* (Sup. Ct.), 141 N. Y. S., 114.
"Whilst any part of a cause remains in Court, the Court
will review its own decrees on a proper showing, by a re-
hearing, according to the English practice." *Britton v.
Johnson,* Dud. Eq., 24.

In *Martin v. Price,* 2 Rich. Eq., 412, at page 457, it is
said:

"It is well settled that while any part of a cause is in
Court, this Court may review its decrees therein, by a re-
hearing."

In *Verdier v. Verdier,* 12 Rich. Eq., 138, it is held:

"According to the English practice, the Court, on proper
showing, may review and reverse its decree while the cause
is under its control, and even may correct a plain error,
especially if clerical, on its own motion, without any peti-
tion (Dan., Ch. Pr., 174n) ; and our own practice is quite
as liberal."

*In Ex parte Dial,* 14 S. C., 584, the Court said:

"It is well understood, and this was admitted in the argument of counsel, that after the remittitur has been transmitted to the Court below in any case, this Court thereby loses jurisdiction of the cause, and·can afterwards entertain no motion whatever in reference thereto. It has passed from the docket of the Court and has gone beyond its reach. Such being the fact, with the view that parties litigant shall not be prejudiced by a too hasty transmission of the remittitur to the Circuit Court, thus cutting off all opportunity for re-examination and review of the·judgment of the Court when necessary, this Court has provided, by rule, that the remittitur shall, in no case, be sent to the Court below until after the expiration of ten days from the final determination by this Court."

In *Hartsfield v. Chamberlin,* 44 S. C., 110; 21 S. E., 798, quoting syllabus, it is held:

"After opinion filed, and before remittitur is sent down, the Supreme Court has the right to grant a rehearing, and reconsider its judgment on the facts."

In the opinion the following language is used:

"In *Pringle v. Sizer,* 3 S. C., 337, this Court held: 'There is no doubt of the power of this Court to correct its judgment founded on a misconception of facts while it has control over the cause.' Again, in same case, just cited, the Court observes: 'Strictly speaking, after a cause has once been remitted, this Court loses all jurisdiction of it; but if before the remittitur has in fact issued, an error as to figures is made apparent, or any obvious mistake of fact is shown, the Court would reform its judgment in conformity to the truth of the matter.' Rule 20 of this Court is intended to supply the machinery necessary for this reconsideration by this Court."

"The Court does not doubt its power, however, to set aside a judgment and order a reargument at the same term, but this is only done when upon the record of the case, one

of the judges who concurred has since come to doubt its correctness." *U. S. v. Knight,* 1 Black., 488; 17 L. Ed., 80.

In *Brown v. Aspden,* 14 How., 25; 14 L. Ed., 311, the Court says:

"Undoubtedly this Court may and would call for a re-argument, where doubts are entertained which it is supposed may be removed by further discussion at the bar."

"The Court of Civil Appeals, after having denied an application for a rehearing, has power to reopen the case and grant an amended application for rehearing during the term." *Gregory v. Webb,* 40 Tex. Civ. App., 360; 89 S. W., 1109.

"While it is not the practice of the Supreme Judicial Court to rehear parties upon questions that have been once argued and decided, or waived or abandoned at a former hearing, it may do so in its discretion." *Nashua & L. R. Corp. v. Boston & L. R. Corp.,* 169 Mass., 157; 47 N. E., 606.

"The authority of the Supreme Court to provide for a rehearing in a case where it has pronounced judgment, and to stay the issuance of a remittitur until its decision on a petition for rehearing, exists, though the Constitution contains no provision therefor." *Noel v. Smith,* 2 Cal. App., 158; 83 P., 167.

"However, while the power to rehear appeals is seldom exercised, the appellate Courts in most jurisdictions have undoubtedly power to grant rehearings." 4 C. J., 621.

"The Legislature cannot give the right to a rehearing in the Supreme Court contrary to its rules where the Constitution creates the Court and provides that the legislative, executive, and supreme judicial powers of the government shall be separate and distinct, and also that the General Assembly may regulate methods of proceeding in 'Courts below the Supreme Court.'" *Herndon v. Insurance Co.,* 111 N. C., 384, 16 S. E., 465, 18 L. R. A., 547.

The case of *State v. Adams,* 83 S. C., 149; 65 S. E., 220, cited by the Chief Justice, is not at all controlling of the point at issue; in fact it is not at all apposite to the discussion. There the defendant had been convicted of murder and sentenced to death; he appealed, and the judgment was affirmed; the case was remanded to the Circuit Court for the purpose of assigning a new day for his execution; the defendant moved for a new trial in the Circuit Court upon after-discovered evidence; the motion was granted; the state appealed, and the order was reversed, this Court remanding the case, as before; the remittitur was stayed to allow the defendant to move this Court for an order sustaining the appeal in order that he might move the Circuit Court for a new trial; this motion was heard by the "Court *en banc*"; the motion was refused on the merits; the defendant then filed a petition to this Court that its judgment reversing the order of the Circuit Court granting a new trial be declared void upon the ground that since that time in another case, *State v. Lee,* 80 S. C., 367; 61 S. E., 657, this Court had overruled the case of *State v. Turner,* 39 S. C., 420; 17 S. E., 885, upon which the judgment reversing the order for a new trial had been based, and held that the Circuit Court does have jurisdiction to hear a motion for a new trial on after-discovered evidence, notwithstanding the pendency of an appeal in the Supreme Court, practically, if not in terms, overruling its former decision. This Court dismissed the petition upon three grounds: (1) That the matter was *res adjudicata* by the former decision reversing the order for a new trial; (2) that this Court was without jurisdiction after the remittitur had been sent down; (3) that the Supreme Court, as ordinarily constituted, "cannot set aside or in any wise lessen the force and effect of a judgment rendered by the Court sitting *en banc,* composed of the Supreme Court and the Circuit Judges."

It thus seems clear that the question now at issue, whether a petition for rehearing can be entertained by the "Court

*en banc,"* while the remittitur is stayed, was not in the slightest degree involved.

The question submitted to the Supreme Court, sitting with the Circuit Judges of the state, so-called the "Court *en banc,"* should be answered in the affirmative.

MESSRS. MANN, DENNIS, DE VORE, SHIPP, and MAULDIN, Circuit Judges, concur.